[11 NE3d 159, 988 NYS2d 86]

WILLIAM JACOBSEN, Appellant, v NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION, Respondent.

Argued February 11, 2014; decided March 27, 2014

826

## POINTS OF COUNSEL

*McCallion & Associates, LLP,* New York City (*Kenneth F. McCallion* of counsel), for appellant. I. The appellate court erred in finding there were no material disputed issues of fact, thus affirming the lower court's grant of summary judgment. (*Alvarez v Prospect Hosp.,* 68 NY2d 320; *Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851; *Giuffrida v Citibank Corp.,* 100 NY2d 72; *Schumacher v Richards Shear Co.,* 59 NY2d 239; *United States Fid. & Guar. Co. v Coca-Cola Co.,* 49 AD2d 849; *Grodin v Liberty Cable,* 244 AD2d 153; *Rotuba Extruders v Ceppos,* 46 NY2d 223; *Stone v Goodson,* 8 NY2d 8; *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395.) II. The First Department erred in affirming the lower court's dismissal of plaintiff's human rights claims since plaintiff was able to perform the essential functions of his job with a reasonable accommodation. (*Pimentel v Citibank, N.A.,* 29 AD3d 141; *Stone v City of Mount Vernon,* 118 F3d 92; *Moritz v Frontier Airlines, Inc.,* 147 F3d 784; *McBride v BIC Consumer Prods. Mfg. Co., Inc.,* 583 F3d 92; *Graves v Finch Pruyn & Co., Inc.,* 457 F3d 181; *Rodal v Anesthesia Group of Onondaga, P.C.,* 369 F3d 113; *Parker v Columbia Pictures Indus.,* 204 F3d 326; *King v Town of Wallkill,* 302 F Supp 2d 279.) III. The Appellate Division wrongly affirmed the lower court's dismissal of plaintiff's human rights claims based on the erroneous premise that such claims were governed by McKinney's Unconsolidated Laws of NY § 7401 (2) and General Municipal Law §§ 50-e and 50-i. (*Sebastian v New York City Health & Hosps. Corp.,* 221 AD2d 294; *Swinton v City of New York,* 61 AD3d 557; *Tannenbaum v City of New York,* 30 AD3d 357; *Mills v County of Monroe,* 89 AD2d 776, 59 NY2d 307, 464 US 1018; *Murphy v American Home Prods. Corp.,* 58 NY2d 293.)

*Michael A. Cardozo, Corporation Counsel*, New York City (*Elizabeth S. Natrella, Leonard Koerner* and *Maxwell Leighton* of counsel), for respondent. I. The Human Rights Law disability discrimination claims were properly dismissed because plaintiff, by his own evidence, was not able to perform the essential job functions of his job. (*Alvarez v Prospect Hosp.*, 68 NY2d 320; *Zuckerman v City of New York*, 49 NY2d 557; *Matter of McEniry v Landi*, 84 NY2d 554; *O'Sullivan v City of New York*, 38 AD3d 467, 9 NY3d 804; *Pembroke v New York State Off. of Ct. Admin.*, 306 AD2d 185; *Bellamy v City of New York*, 14 AD3d 462; *City of New York v State Div. of Human Rights*, 70 NY2d 100; *Matter of Miller v Ravitch*, 60 NY2d 527; *Yasinosky v New York City Tr. Auth.*, 193 AD2d 731; *McCarthy v Nassau County*, 208 AD2d 810.) II. Plaintiff's argument on a purported retaliation claim fails on numerous grounds, including lack of preservation and lack of merit. (*Quain v Buzzetta Constr. Corp.*, 69 NY2d 376.)

### OPINION OF THE COURT

Abdus-Salaam, J.

The issue before us is whether, on a motion for summary judgment disposing of an employee's disability discrimination claims under the New York City Human Rights Law (*see* Administrative Code of City of NY § 8-107) and the New York State Human Rights Law (*see* Executive Law § 296), an employer's failure to consider the reasonableness of a proposed accommodation for a generally qualified employee's disability via a good faith interactive process precludes the employer from obtaining summary judgment. In resolving this issue, we reiterate that the State Human Rights Law and the City Human Rights Law set forth distinct legal standards for establishing the existence of a covered disability that can be reasonably accommodated. Despite those differing standards, we conclude that both statutes generally preclude summary judgment in favor of an employer where the employer has failed to demonstrate that it responded to a disabled employee's request for a particular accommodation by engaging in a good faith interactive process regarding the feasability of that accommodation.

I

A

In 1979, plaintiff William Jacobsen began his employment with defendant New York City Health and Hospitals Corporation (HHC). Plaintiff joined HHC as an assistant health facilities planner. In this role, roughly twice a week, plaintiff had to

visit construction sites within the Manhattan area hospital network to which he was assigned. On those visits, plaintiff met with project directors, inspected the structures of HHC buildings and supervised the progress of HHC construction projects. For the rest of each week, plaintiff worked at HHC's central office at 346 Broadway in Manhattan, completing reports on the site visits and performing any other necessary office work. In 1982, plaintiff was promoted to health facilities planner and assigned to HHC's Bellevue network. Although plaintiff was assigned to larger projects, his responsibilities remained the same, and he continued to make site visits only once or twice a week. In June 2005, plaintiff was diagnosed with a form of pulmonary dysfunction.

In August 2005, HHC reassigned plaintiff to its Queens hospital network, and he primarily oversaw projects at the Queens Hospital Center (QHC), where HHC was conducting extensive renovations and asbestos abatement. As a result of this transfer, plaintiff had to relocate his office to QHC and visit construction sites more frequently. Plaintiff could no longer visit the central office in Manhattan on a regular basis. In September 2005, plaintiff received a new diagnosis of pneumoconiosis, an occupational lung disease caused by repeated and prolonged inhalation of asbestos or other dust particles.

In October 2005, plaintiff requested a three-month medical leave of absence, during which he would submit to an open lung biopsy to further evaluate his condition. In support of plaintiff's application for medical leave, his physician, Gwen Skloot, M.D., certified to HHC that plaintiff "currently[ ] [could not] perform usual tasks" and "should not be exposed to inhaled dusts." In December 2005, Dr. Skloot sent a letter to HHC informing the corporation that, because plaintiff "ha[d] been treated with systemic corticosteroids and ha[d] demonstrated clinical improvement," he was "ready to return to work." However, Dr. Skloot cautioned that plaintiff could "not be further exposed to any type of environmental dust" or "be present at any construction site." In a reply letter, HHC asked Dr. Skloot to identify the "exact date [plaintiff] c[ould] return" to work and inquired as to whether plaintiff was "medically cleared to fully perform the essential functions of his duties." A list of plaintiff's job duties attached to HHC's letter specified that plaintiff "spen[t] approximately 75% of his working hours in the field monitoring several construction projects and attend[ed] construction management meetings on site," and that he "spen[t] approximately 25% of his working hours in the office."

In January 2006, while waiting for Dr. Skloot to respond, HHC filed a Workers' Compensation Board report, which stated that plaintiff had been exposed to asbestos dust at an HHC facility and that plaintiff's supervisor had been aware of his injury since January 2005. Around the same time, plaintiff's union representative wrote to HHC that the union was "requesting a reasonable accommodation for [plaintiff] that he be allowed to return to work and assigned work that he is capable of doing in the office."

In March 2006, Dr. Skloot replied to HHC's inquiry about plaintiff's return date and ability to perform his essential job functions, stating:

> "[plaintiff] is ready to return to work immediately (as of the date of this letter). He is medically cleared to work in the field so that he can attend project meetings. I have advised him that it is imperative that he not be exposed to any type of environmental dust, and he has assured me that his field work will not include such exposure."

Thereafter, plaintiff returned to QHC and performed regular site visits until May 2006. During this post-leave work period, according to plaintiff's subsequent affidavit in opposition to summary judgment, plaintiff told his supervisor, Vincent James, that he was having difficulty breathing. Plaintiff asked James to provide him with protective respiratory equipment and to reassign him to the central office in Manhattan. Plaintiff also complained to Anita O'Brien, HHC's director of the QHC facility, that he was having trouble breathing. O'Brien provided plaintiff with a dust mask, but he did not use the mask at times because it impeded his ability to communicate. Plaintiff requested that O'Brien supply him with a respirator, by which he meant a device that was "fit tested by an industrial hygienist" and "specifically designed to filter the particulates [one] [is] exposed to" in "asbestos abatement projects."

In May 2006, plaintiff wrote to HHC requesting a transfer back to the central office, and he maintained that he was "able to perform any and all functions, which [had been] assigned to [him] prior to [his] relocation to QHC." Plaintiff attached to his request a letter from another physician, Stephen M. Levin, M.D. Dr. Levin stated, "[i]t is my strong recommendation that [plaintiff] be placed in a work setting free from exposure to airborne irritant or fibrogenic dusts, fumes and gases, if his current lung condition is not to be made worse by such exposure."

Apparently in response to plaintiff's request, Vincent James sent a memorandum to HHC's Human Resources Department in which he observed:

> "[plaintiff's] job responsibilities require that he spend 80% of his working hours in the field and 20% of his working hours in central office. . . . It was my understanding that [plaintiff] was cleared by (HR) to return to work at full capacity. Due to the high volume of work at Queens Hospital Center, it is imperative that we have a network manager cover the projects at that facility."

Plaintiff's union counsel then wrote to HHC, insisting "that HHC find an appropriate place in the agency for him to work where he is not regularly assigned to construction sites."

On or about June 5, 2006, plaintiff filed a disability discrimination complaint against HHC with the New York State Division of Human Rights.[1] Approximately two days later, HHC placed plaintiff on unpaid medical leave for six months, offering to let him return to his position if his medical condition improved. HHC declared:

> "[G]iven the nature of your duties as a Health Facilities Planner, there is no position in your title available in the Corporation that would not, of necessity, involve your working in conditions hazardous to your health. Therefore, we must conclude that at present you are not able to perform the essential functions of your job."

In an August 2006 letter to HHC, Dr. Skloot wrote that "[plaintiff] w[ould] never be medically cleared to 'fully perform the essential functions of his duties' " because "it [wa]s imperative to his health that he not be further exposed to any type of environmental dust." Dr. Skloot continued, "[Plaintiff] recently attempt[ed] to return to the field and developed significant worsening of his respiratory status, requiring a course of systemic steroids," adding, "Therefore, the only work he is cleared to do is office work." At the end of plaintiff's involuntary medical leave in March 2007, HHC terminated plaintiff.

## B

In March 2008, plaintiff commenced this action for damages by filing a complaint in which he alleged that HHC had unlawfully

---

**1.** After the administrative process failed, plaintiff successfully obtained a voluntary dismissal of his administrative complaint to enable him to pursue legal action.

discriminated on the basis of disability in violation of the State Human Rights Law (State HRL) and City Human Rights Law (City HRL). He further claimed that HHC had engaged in gross negligence by exposing him to environmental dust without providing him with protective respiratory equipment. Plaintiff alleged that HHC could have reassigned him to the central office and "provided him with the protective and respiratory equipment necessary to protect him from further respiratory damage if and when it may have been necessary for him to visit a construction site." HHC answered, and it moved for summary judgment and to dismiss the complaint. HHC contended that it had terminated plaintiff as a result of his inability to continue to conduct field visits, which was an essential function of his position as a health facilities planner. According to HHC, the relevant three-year statute of limitations barred plaintiff's gross negligence claim. Plaintiff opposed HHC's motion and asserted that, had HHC granted him a reasonable accommodation when he first requested one, he would have been able to perform occasional field visits with proper respiratory equipment and, therefore, to perform the essential functions of his job.

Supreme Court granted HHC's motion for summary judgment and dismissed the complaint (2011 NY Slip Op 34073[U] [2011]). In the court's view, no reasonable accommodation was available for plaintiff because his own medical evidence led "to the inevitable conclusion that the [p]laintiff c[ould] [not], for medical reasons, spend any time at a construction site, and therefor[e], c[ould] never return to his old duties," and thus, "[b]y the [p]laintiff's own evidence, he ha[d] not been discriminated against" (*id.* at *3). Moreover, the court found that plaintiff made no allegation that "specific equipment could overcome the doctor's warning and prescription" to stay away from construction sites (*id.*). The court further determined that plaintiff's gross negligence cause of action was time-barred. Plaintiff appealed.

The Appellate Division, with one Justice dissenting in part, affirmed Supreme Court's order (*see Jacobsen v New York City Health & Hosps. Corp.*, 97 AD3d 428, 429-433 [1st Dept 2012]). The Appellate Division ruled that Supreme Court had properly dismissed the complaint, stating, "HHC established that plaintiff could not, even with a reasonable accommodation, perform the essential functions of his job" (*id.* at 431 [citations omitted]). The court determined that, because HHC had inquired of Dr. Skloot regarding plaintiff's ability to work and

had kept plaintiff's job open during his medical leaves of absence, HHC had engaged in a "good faith interactive process" when it determined that a reasonable accommodation for plaintiff's disability was not available (*id.* at 432). The court rejected plaintiff's assertion that HHC could have reasonably accommodated his disability by giving him a respirator upon his return to QHC in March 2006 (*id.*). According to the court, plaintiff "focuse[d]" on this potential accommodation "only on appeal" (*id.*). In any event, the court concluded, given that plaintiff had not consistently worn the dust mask he had received from HHC, plaintiff could hardly complain about the inadequacy of the protection he had been given (*id.* at 432-433). The court also concluded that plaintiff's gross negligence claim had been properly dismissed as time-barred because more than three years had passed since plaintiff had been allegedly exposed to asbestos and, in any event, the claim had been "barred by operation of the Workers' Compensation Law" (*id.* at 433 [citations omitted]).

In a comprehensive opinion, Justice Manzanet-Daniels dissented in part and voted to modify Supreme Court's order to reinstate plaintiff's disability discrimination claims (*see id.* at 433-437 [Manzanet-Daniels, J., dissenting in part]). In the dissent's view, triable issues of fact existed regarding whether plaintiff would have been able to perform the essential functions of his position if he had been provided the appropriate respiratory equipment and whether HHC had "made a reasonable accommodation for plaintiff's disability" (*id.* at 435-436). The dissent determined that HHC could have reasonably accommodated plaintiff's disability by providing him with proper respiratory equipment or reassigning him to the central office, where he had previously worked for 27 years while making only limited site visits (*see id.* at 436). The dissent concluded that the dust mask provided by HHC was not a reasonable accommodation because "a specialized mask or respirator device designed to filter and protect against airborne dust from known toxins or potential carcinogens" was a statutorily reasonable accommodation, whereas "a dust mask, of the type to be found in any hardware store," did not meet that criterion (*id.* at 437). The dissent further determined that the record was devoid of evidence that HHC had engaged in any good faith interactive process designed to determine the existence of a reasonable accommodation (*id.*).

Plaintiff appeals to this Court by permission of the Appellate Division, which certified to us the following question: "Was the

order of this Court, which affirmed the order of the Supreme Court, properly made?" (2012 NY Slip Op 85962[U] [2012]). For the reasons set forth below, we decline to answer the certified question on the ground that it is unnecessary, modify the order of the Appellate Division by reinstating plaintiff's State HRL and City HRL claims, and otherwise affirm.

## II

### A

A party moving for summary judgment must demonstrate that "the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment" in the moving party's favor (CPLR 3212 [b]). Thus, "the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "This burden is a heavy one and on a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party" (*William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh*, 22 NY3d 470, 475 [2013] [internal quotation marks omitted]). If the moving party meets this burden, the burden then shifts to the non-moving party to "establish the existence of material issues of fact which require a trial of the action" (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012]). Notwithstanding the differing burdens of proof at trial under the State HRL and the City HRL, an employer moving for summary judgment with respect to an employee's claims under both statutes still has the burden of showing that the employee's evidence and allegations present no triable material issue of fact (*see Ferrante v American Lung Assn.*, 90 NY2d 623, 630 [1997] [concluding that an employer must carry its burden on a summary judgment motion with respect to an employee's age discrimination claim under the State HRL, notwithstanding that the employee bears the ultimate burden at trial]; *see also Romanello v Intesa Sanpaolo, S.p.A.*, 22 NY3d 881, 885 [2013] [requiring an employer to satisfy its burden under CPLR 3211 to obtain dismissal of a City HRL claim]).

Turning from the summary judgment burden to the substance of the statutes at issue, the State HRL forbids employment discrimination on the basis of an employee's disability, and the

City HRL provides even greater protection against disability-based discrimination (*see Romanello*, 22 NY3d at 883-885; *Matter of Delta Air Lines v New York State Div. of Human Rights*, 91 NY2d 65, 72 [1997]; *see also Phillips v City of New York*, 66 AD3d 170, 176 [1st Dept 2009]). The employee's complaint states a prima facie case of discrimination under both the State HRL and City HRL if the employee suffers from a statutorily defined disability and the disability caused the behavior for which the employee was terminated (*see Matter of McEniry v Landi*, 84 NY2d 554, 558 [1994]; *see also Pimentel v Citibank, N.A.*, 29 AD3d 141, 145 [1st Dept 2006], *lv denied* 7 NY3d 707 [2006]; *Timashpolsky v State Univ. of N.Y. Health Science Ctr. at Brooklyn*, 306 AD2d 271, 273 [2d Dept 2003], *lv denied* 1 NY3d 507 [2004]).

Under the State HRL, if an employee has a physical impairment that prevents the employee from performing the core duties of his or her job even with a reasonable accommodation, the employee does not have a disability covered by the statute, and consequently, the employer is free to take adverse employment action against the employee based on that impairment (*see* Executive Law § 292 [21]; *Romanello*, 22 NY3d at 883-884; *see also Pimentel*, 29 AD3d at 146). On the other hand, if a reasonable accommodation would permit the employee to perform the essential functions of the employee's position, the employee has a "disability" within the meaning of the statute, and the employer cannot disadvantage the employee based on that disability (*see Romanello*, 22 NY3d at 883-884). A "reasonable accommodation" for an employee's impairment is one which "permit[s] an employee . . . with a disability to perform in a reasonable manner the activities involved in the job" and does not impose an "undue hardship" on the employer's business (Executive Law § 292 [21-e]). Thus, a proper State HRL claim must be supported by substantiated allegations that, " 'upon the provision of reasonable accommodations, [the employee] could perform the essential functions of [his or] her job,' " and the employee bears the burden of proof on this issue at trial (*Romanello*, 22 NY3d at 884, quoting *Staskowski v Nassau Community Coll.*, 53 AD3d 611, 611 [2d Dept 2008]; *see* Executive Law § 292 [21]; *Gill v Maul*, 61 AD3d 1159, 1160 [3d Dept 2009]).

"Unlike the State HRL, the City HRL's definition of 'disability' does not include 'reasonable accommodation' or the ability to perform a job in a reasonable manner," but rather "defines

'disability' solely in terms of impairments" (*Romanello*, 22 NY3d at 885; *see* Administrative Code of City of NY § 8-102 [16]). The City HRL forbids employment discrimination against physically and mentally impaired individuals, and employers may raise the inability of disabled employees to "with reasonable accommodation, satisfy the essential requisites of the[ir] job[s]" only as an affirmative defense to a City HRL claim (Administrative Code of City of NY § 8-107 [15] [b]). Thus, unlike the State HRL, the City HRL places the burden on the employer to show the unavailability of any safe and reasonable accommodation and to show that any proposed accommodation would place an undue hardship on its business (*see Romanello*, 22 NY3d at 885, citing *Phillips*, 66 AD3d at 183).

Although the State HRL and City HRL maintain separate burdens of proof at trial regarding the existence of a reasonable accommodation, under both statutes an employee's request for an accommodation is relevant to the determination of whether a reasonable accommodation can be made. In that regard, the State HRL defines a "reasonable accommodation" as an accommodating action that does not unreasonably burden the employer "from which [the] action is *requested*" (Executive Law § 292 [21-e] [emphasis added]). By defining a "reasonable accommodation" in terms of an employee's request for accommodation and the employer's ability to conduct its operations within the limits of the employee's proposed arrangement, the statute indicates that an employee's suggestion of a specific accommodation must prompt the employer to consider whether the burden thus imposed upon the employer's business would be reasonable. In this way, the employer's response to the employee's request and any ensuing dialogue about the impact of the proposed accommodation on the employer's business inform the determination of whether a reasonable accommodation exists.

By encouraging employers to consider the viability of impaired employees' requested adjustments to their working conditions, the State HRL's definitions of "disability" and "reasonable accommodation" further the legislative intent behind the statute's coverage of disabilities that may be reasonably accommodated. When it amended the State HRL in 1979 to enhance protections against disability discrimination, the legislature sought to create an "individualized standard" for determining whether an employee could perform the essential functions of his or her job with a reasonable accommodation (*Matter of Miller v Ravitch*,

60 NY2d 527, 532 [1983]). The legislature enacted this more tailored approach in response to judicial decisions which had insulated employers from liability based on the mere possibility, however speculative, that someone with the claimant's condition might become unable to perform certain job functions (*see Matter of Westinghouse Elec. Corp. v State Div. of Human Rights*, 49 NY2d 234, 237-238 [1980]). The individualized standard also naturally flows from the State HRL's original purpose "to assure that every *individual* within this state is afforded an equal opportunity to enjoy a full and productive life" (Executive Law § 290 [3] [emphasis added]).

Thus, in amending the State HRL, the legislature evidently concluded that an employer cannot disadvantage a disabled employee based on a generalized sense that disabilities of the kind suffered by the employee can rarely be accommodated and that the employee is unlikely to be able to satisfy his or her employment responsibilities. Given that legislative finding, we are bound to interpret the State HRL's definitions of "reasonable accommodation" and "disability" to require that, where the employee seeks a specific accommodation for his or her disability, the employer must give individualized consideration to that request and may not arbitrarily reject the employee's proposal without further inquiry (*see* Budget Rep on Bills, Bill Jacket, L 1979, ch 594 at 6 [stating that the amendments to the State HRL were designed to protect *"individuals* who can perform a job, but who may use special equipment or some other special arrangements in performing the job . . . from *arbitrary discrimination"*] [emphasis added]; Letter from Governor's Office of Employee Relations, June 22, 1979, *id.* at 18 [stating that, under the amended State HRL, adverse employment actions against an individual could not be justified based upon a mere relationship between the disability and the employee's ability to perform certain job duties but rather were warranted only "based upon an *insurmountable* 'disability' which would prevent a *particular individual* from performing the tasks which are inherently involved in a *particular job"*] [emphasis added]).

Furthermore, this interpretation of the statute, which makes a dialogue about the reasonableness of the employee's proposed accommodation relevant to the "reasonable accommodation" analysis, comports with the legislature's goal of encouraging employers to voluntarily integrate disabled employees into the workplace through fair-minded discussion instead of obstinately refusing any accommodation and forcing employees to pursue

costly litigation (*see* Governor's Program Bill Mem, *id.* at 11 ["This amendment (to the State HRL) is expected to reduce litigation under the definition of the term 'disability' "]; Letter from St Commr of Human Rights, June 22, 1979, *id.* at 10 [stating that the amended State HRL would "serve to reduce costly litigation that might otherwise arise" regarding the definition of a covered "disability"]). By speaking openly about an employee's impairment and the employer's ability to adjust its practices to meet the employee's needs, the parties may come to a mutually beneficial arrangement which ensures that the disabled individual has a fair opportunity to work, provides the employer with the advantages of a productive and qualified disabled employee, and forestalls needless litigation. The statute prizes reasonableness, and nothing can be more reasonable than an open-minded discussion resulting in a viable compromise.

█ In light of the importance of the employer's consideration of the employee's proposed accommodation, the employer normally cannot obtain summary judgment on a State HRL claim unless the record demonstrates that there is no triable issue of fact as to whether the employer duly considered the requested accommodation. And, the employer cannot present such a record if the employer has not engaged in interactions with the employee revealing at least some deliberation upon the viability of the employee's request. Consequently, to prevail on a summary judgment motion with respect to a State HRL claim, the employer must show that it "engage[d] in a good faith interactive process that assesse[d] the needs of the disabled individual and the reasonableness of the accommodation requested" (*Phillips*, 66 AD3d at 176; *see Parker v Columbia Pictures Indus.*, 204 F3d 326, 338 [2d Cir 2000] [holding that an employee's proposal of a reasonable accommodation "triggers a responsibility on the employer's part to investigate that request and determine its feasibility," and "(a)n employer who fails to do so, and instead terminates the employee based on exhaustion of leave, has discriminated 'because of' disability within the meaning of the (federal Americans with Disabilities Act)"]; *see also Kinneary v City of New York*, 601 F3d 151, 156 [2d Cir 2010]; *Morton v United Parcel Serv., Inc.*, 272 F3d 1249, 1256 n 7 [9th Cir 2001], *overruled in part on other grounds by Bates v United Parcel Serv., Inc.*, 511 F3d 974, 998 [9th Cir 2007]; *Barnett v U.S. Air, Inc.*, 228 F3d 1105, 1116 [9th Cir 2000]). And, because the City HRL provides broader protections against disability discrimination than the State HRL, the City HRL un-

questionably forecloses summary judgment where the employer has not engaged in a good faith interactive process regarding a specifically requested accommodation (*see Phillips*, 66 AD3d at 176; *see also Romanello*, 22 NY3d at 884-885).

■ Our conclusion that, in all but the most extreme cases, the lack of a good faith interactive process forecloses summary judgment in favor of the employer should not be construed too broadly. At a trial on a State HRL claim, the plaintiff employee still bears the burden of proving the existence of a reasonable accommodation that would have enabled the employee to perform the essential functions of his or her position (*see* Executive Law § 292 [21]; *Romanello*, 22 NY3d at 884). Furthermore, to the extent the Appellate Division's decision in *Phillips* can be interpreted as implying that a good faith interactive process is an independent element of the disability discrimination analysis under either the State or City HRL which, if lacking, automatically compels a grant of summary judgment to the employee or a verdict in the employee's favor (*cf.* 66 AD3d at 175-176), we reject that notion.

As discussed, the employer's decision to engage in or forgo an interactive process is but one factor to be considered in deciding whether a reasonable accommodation was available for the employee's disability at the time the employee sought accommodation. Without having participated in that process in response to the employee's request, the employer cannot prevent the employee from bringing a State HRL claim to trial on the reasonable accommodation issue, but on the other hand, the employee cannot obtain a favorable jury verdict or summary judgment solely based on the employer's failure to engage in an interactive process. Likewise, at trial on a City HRL claim, the employer does not automatically fail to establish the affirmative defense premised on the lack of any reasonable accommodation solely because it did not participate in an interactive process, though that failure poses a formidable obstacle to the employer's attempt to prove that no reasonable accommodation existed for the employee's disability.[2]

---

2. In *Parker v Columbia Pictures Indus.* (204 F3d at 326), the United States Court of Appeals for the Second Circuit interpreted the federal Americans with Disabilities Act (ADA) and found that an employer's failure to participate in an interactive process designed to determine the viability of an employee's proposed accommodation constituted an element of causation

## B

■ The principles outlined above compel us to conclude that HHC was not entitled to summary judgment with respect to plaintiff's State HRL and City HRL claims.

To begin, the trial court erred in granting summary judgment to HHC on plaintiff's City HRL claim because the evidence warranted a trial on HHC's ability to have reasonably accommodated plaintiff's impairment by reassigning him to its central office in Manhattan. Although, near the end of plaintiff's first medical leave in December 2005, HHC wrote to plaintiff's doctor claiming that 75% of plaintiff's official job duties consisted of on-site construction supervision and 25% consisted of office work, plaintiff's affidavit in support of his complaint and his deposition testimony indicated that, during the decades in which plaintiff worked at the central office in Manhattan and prior to his transfer to QHC, he did office work 80% of the time and on-site supervision 20% of the time. And in May 2006, plaintiff sent a letter to a senior official at HHC stating that, although the conditions at QHC were hazardous to his health, he was "requesting reasonable accommodation" in the form of a transfer to the central office, where he would be "able to perform any and all functions, which were assigned to [him] prior to [his] relocation to QHC." Plaintiff's union counsel sent a follow-up letter requesting that plaintiff be transferred to any location within HHC's overall organization that would allow plaintiff to avoid working at construction sites.

In the face of this evidence that plaintiff had been able to work at the central office for decades doing only limited on-site

insofar as it revealed that the employer had discriminated intentionally against the employee "because of" the employee's disability (*Parker*, 204 F3d at 338). Subsequently, however, the Second Circuit and most other federal courts have held the interactive process to be a means of determining the availability of a reasonable accommodation rather than an overall sign of the discriminatory basis of an adverse employment action (*see McBride v BIC Consumer Prods. Mfg. Co., Inc.*, 583 F3d 92, 100 [2d Cir 2009] [summarizing cases describing the interactive process as part of the reasonable accommodation determination]). In our view, the employer's failure to hold a constructive dialogue about the possibility of a reasonable accommodation may indicate that the employer has discriminated "because of" an individual's disability within the meaning of the State HRL (Executive Law § 296 [1] [a]) and the City HRL (Administrative Code of City of NY § 8-107 [1] [a]) in some cases. However, under both statutes, the lack of an interactive process is relevant primarily to the issue of whether a reasonable accommodation was available for the employee's disability and does not substantially impact the court's or the factfinder's determination of causation.

work and that he might be able to continue working there despite his disability, HHC did not satisfy its burden of showing that no reasonable accommodation existed under the City HRL merely by asserting that plaintiff's job would entail considerable construction supervision regardless of the location of his office (*see Romanello*, 22 NY3d at 885). Instead, the parties' conflicting evidence created a triable issue of fact as to whether, in light of the totality of the work conditions existing at the central office at the time the transfer was requested, plaintiff could have reasonably performed his essential job duties by handling the office work there without visiting construction sites that contained dangerous amounts of environmental dust (*see Matter of Miller*, 60 NY2d at 533 n ["We reject the suggestion . . . that the reasonableness standard (for accommodating disabilities) should be interpreted in a technical manner so as to require a parsing out and separate evaluation of each activity, as opposed to a more general consideration of the employee's over-all ability to perform the job" because "(w)hen reasonableness is the test(,) the weight to be accorded to a particular factor cannot be predicted in advance but must be considered in light of all the circumstances of the particular case"]; *see also Sharp v Abate*, 887 F Supp 695, 699 [SD NY 1995] [under the ADA, "whether physical qualifications are essential functions of a job requires the court to engage in a *highly fact-specific inquiry*. . . . Such a determination should be based upon more than statements in a job description and should reflect the actual functioning and circumstances of the particular enterprise involved"] [internal quotation marks and citation omitted]).[3]

In addition, by testifying that he had requested a respirator to enable him to perform site visits upon his return from his first medical leave in early 2006, plaintiff raised a material factual issue as to HHC's ability to have reasonably accommodated his disability by providing him with a respirator or comparable protective gear. As plaintiff testified, he had repeatedly asked his superiors for a respirator, i.e., a "fit tested" de-

---

**3.** Notably, in seeking a transfer, plaintiff was not improperly attempting to compel HHC to establish "a new light-duty position or a permanent light-duty position" (*Matter of Mair-Headley v County of Westchester*, 41 AD3d 600, 603 [2d Dept 2007]). Rather, plaintiff requested reassignment to an existing position which he had previously held. Nothing in the record indicates that the position was no longer open or that plaintiff could not resume the position pursuant to a series of personnel transfers. In this particular case, the feasability of the proposed reassignment should have been resolved at trial and not on a summary judgment motion.

vice that filters out airborne particulates, and as a matter of common sense, such a device would have reduced plaintiff's dust exposure and logically might have allowed him to continue working at construction sites at the time he asked for that accommodation. Contrary to HHC's contention, plaintiff did not have to present medical testimony further substantiating the efficacy of his proposed accommodation to survive HHC's summary judgment motion; on that motion, plaintiff bore no burden, as it was HHC's burden to demonstrate that no potential accommodation, including a respirator, was reasonable. Because HHC never contested the value of a respirator or alleged that providing plaintiff with a respirator would have caused undue hardship to its business, HHC was not entitled to summary judgment on the theory that a respirator was not a reasonable accommodation for plaintiff's disability (*see Matter of New Venture Gear Inc. v New York State Div. of Human Rights*, 41 AD3d 1265, 1267 [4th Dept 2007] [provision of protective gear to alleviate effects of cleaning products on employee would have been a reasonable accommodation]).[4]

Additionally, although plaintiff's State HRL claim may prove unsuccessful at trial because he will be required to show that his disability could have been reasonably accommodated, this claim should have survived summary judgment because, at that pretrial stage, HHC still bore the burden of establishing that, as a matter of law, plaintiff did not have a statutorily covered disability for which a reasonable accommodation had been available. As discussed, HHC failed to carry that burden insofar as plaintiff's testimony and the correspondence, taken in the light most favorable to plaintiff (*see Vega*, 18 NY3d at 503), gave rise to a logical basis on which a factfinder might conclude that HHC could have reasonably accommodated plaintiff's need to avoid dust exposure by either providing him with a respirator or reassigning him to the central office. At the very least, plaintiff's evidence could support a finding that a combination of a respirator and a transfer to the central office might have reduced his dust exposure to safe levels by enabling him to

---

**4.** The Appellate Division majority seems to have believed that plaintiff did not oppose summary judgment on the ground that a respirator was a reasonable accommodation (*see Jacobsen*, 97 AD3d at 432). However, while plaintiff did not put that argument front and center in his papers opposing summary judgment, his affidavit in response to HHC's summary judgment motion repeatedly mentioned his requests for a respirator and noted that he would have been able to conduct site visits by wearing proper respiratory equipment. Thus, plaintiff adequately raised this issue before the trial court.

conduct office work and occasional site visits, during which he would have had adequate respiratory protection.

Moreover, with respect to both claims, HHC failed to show the lack of any material issue of fact regarding its participation in a good faith interactive process. When plaintiff asked for a respirator shortly after his return to work, HHC denied that request without considering it and instead merely provided plaintiff with a dust mask. Around that time, plaintiff and his union counsel repeatedly requested that HHC reassign him to the central office, and HHC belatedly responded by placing plaintiff on involuntary medical leave in June 2006, at which point HHC did not specifically address the viability of the requested transfer to the central office but rather made the conclusory assertion that plaintiff could not work safely in any position at the corporation. Thus, far from showing that, as a matter of law, HHC had participated in a good faith interactive process which revealed that plaintiff's proposed accommodations were unreasonable, the record demonstrates that, given HHC's limited interactions with plaintiff, a material issue of fact existed as to whether plaintiff's proposed accommodations or any other potential accommodation was reasonable.

Nonetheless, HHC posits that plaintiff's lung disease prevented him from performing the essential field work required by his job, and that HHC carried its burden on summary judgment of demonstrating that no reasonable accommodation for that disability existed. In support of that argument, HHC relies on: (1) Dr. Skloot's October 2005 letter in support of plaintiff's request for a voluntary medical leave, in which Dr. Skloot stated that plaintiff could not perform the "usual tasks" associated with his job; (2) Dr. Skloot's December 2005 letter reporting on plaintiff's condition toward the end of his first medical leave, in which Dr. Skloot stated that plaintiff could not visit any construction site; and (3) Dr. Skloot's August 2006 letter stating that, after plaintiff's return from his first medical leave and his attempt to continue working at the QHC site, plaintiff's condition had deteriorated to the point that he would never be cleared to return to work. In HHC's view, those letters constituted an admission that plaintiff could not perform the 75% of his duties comprised of on-site visits, which necessarily entailed exposure to environmental dust. However, viewed in the light most favorable to plaintiff, the letters cited by HHC at most reflected plaintiff's inability to perform the essential functions of his position either before he started his first medical leave, during

which his condition greatly improved, or after HHC refused to provide him with a respirator and a transfer, at which time plaintiff had become totally disabled. None of those letters indicated that plaintiff was unable to visit construction sites with the aid of a respirator or carry out core job functions at the central office when he requested those accommodations.

HHC's most compelling argument about the letters is that, in light of the pre-leave letters describing plaintiff's severe health problems, Dr. Skloot's March 2006 letter cautioning that plaintiff had to avoid exposure to environmental dust suggested that plaintiff's condition remained extremely difficult to accommodate notwithstanding his improvement during his leave of absence. However, the March 2006 letter also indicated that plaintiff was ready to return to work and perform field work, and plaintiff insisted that he could perform his essential employment responsibilities at the central office and/or with the aid of a respirator. Therefore, any conflict among Dr. Skloot's prior accounts of plaintiff's medical condition, the March 2006 letter and plaintiff's remaining evidence created a factual issue for trial, not grounds for summary judgment (*see generally Matter of New York State Dept. of Correctional Servs. v New York State Div. of Human Rights*, 57 AD3d 1057, 1058-1059 [3d Dept 2008] [upholding agency's determination that the employer had unlawfully discriminated on the basis of the employee's disability, even though there was conflicting medical evidence as to whether the employee's heart condition could have been accommodated]).

We reject HHC's claim that it was entitled to summary judgment because, after HHC denied his request for an accommodation, plaintiff became totally unable to perform his essential job duties. Under the State HRL and the City HRL, the relevant inquiry is whether the employee was capable of performing the core functions of the employee's position at the time that the employer refused to accommodate the employee's disability. Nothing in those statutes relieves the employer of liability due to the employee's becoming completely disabled long after an accommodation has been sought.

Indeed, an employer's failure to reasonably accommodate a worker's disability as soon as the employer learns of that condition is the very societal ill which the relevant anti-discrimination statutes were designed to combat. The statutes recognize the employer's failure in that regard to be particularly invidious because it forces the worker either to quit his or her job in order

to preserve the worker's health or else to continue working without adequate protective measures and then succumb to a debilitating impairment. Given the statutes' purpose of protecting disabled individuals from this pernicious quandary, we refuse to interpret the State HRL and the City HRL to reward an employer with summary judgment simply because a disabled employee tried to keep his or her livelihood by persevering in the face of the employer's refusal to accommodate the employee's disability, after which the employee became totally disabled.

To the extent HHC suggests that the trial court properly granted it summary judgment because HHC gave plaintiff a dust mask at the QHC site, which he did not always wear, we find that contention unavailing. To be sure, plaintiff received a dust mask from a supervisor, and because the dust mask impeded his ability to communicate, especially over the telephone, he sometimes did not wear the mask. However, plaintiff did wear the dust mask at times, and given that plaintiff's lung disease grew worse despite his use of the mask, triable issues of fact arose regarding the effectiveness of the mask as an alternative reasonable accommodation and any other role the mask might have played in the State HRL and City HRL analyses. Thus, despite plaintiff's failure to fully utilize the limited protection he was given, the dust mask was not necessarily a reasonable alternative to his requested accommodation of a fit-tested respirator, and his failure to use the mask does not indicate that the respirator would have been an unreasonable or ineffective accommodation as a matter of law.

Finally, although plaintiff's disability discrimination causes of action should have survived HHC's summary judgment motion, we decline to reinstate plaintiff's gross negligence cause of action or to consider his unpreserved retaliation claims.

### III

In recognizing that plaintiff presented colorable claims of disability discrimination under the City HRL and the State HRL, we do not intimate that plaintiff has a winning case for purposes of trial. Reasonable minds may differ on the persuasiveness of plaintiff's evidence with respect to the actual amount of time he would have been required to spend visiting construction sites at the central office, his ability to have performed any site visits required of him at that location, a respirator's ability to have prevented the further exacerbation of his lung ailment, and the extent to which an interactive process would have led to the

discovery of a reasonable accommodation. Furthermore, although on summary judgment HHC bore the burden of establishing its entitlement to judgment as a matter of law on all aspects of plaintiff's claims, the burden of proof at any trial in this case will not be so generous to plaintiff. At a trial on his State HRL claim, plaintiff will have to prove that a reasonable accommodation existed for his disability, and while HHC will bear the burden of proof on the reasonable accommodation issue in opposing plaintiff's City HRL claim, both statutes require plaintiff to demonstrate that HHC fired him based on his disability and not for some permissible reason.

In sum, we decide only that the trial court erroneously granted summary judgment to HHC based on plaintiff's having become totally disabled after his accommodation request was denied, and that HHC did not demonstrate its entitlement to judgment as a matter of law regarding the other aspects of plaintiff's disability discrimination claims. Accordingly, the order of the Appellate Division should be modified, without costs, by reinstating the first and second causes of action of the complaint, and as so modified, affirmed, and the certified question should not be answered as unnecessary.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and RIVERA concur.

Order modified, without costs, by reinstating the first and second causes of action in the complaint and, as so modified, affirmed, and certified question not answered as unnecessary.