Watson v Emblem Health Servs. (2018 NY Slip Op 00123)





Watson v Emblem Health Servs.


2018 NY Slip Op 00123


Decided on January 9, 2018


Appellate Division, First Department


Andrias, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 9, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman, J.P.
Peter Tom
Richard T. Andrias
Ellen Gesmer,JJ.


103253/12 5064 

[*1]Suzette Watson, Plaintiff-Appellant,
v
Emblem Health Services, Defendant-Respondent.



Plaintiff appeals from the order of the Supreme Court,
New York County (David B. Cohen, J.), entered on or about July 8, 2016, which granted defendant's motion for summary judgment dismissing the complaint.




Tuckner, Sipser, Weinstock & Sipser, LLP, New York (William J. Sipser of counsel), for appellant.
Cozen O'Connor, New York (Michael C. Schmidt of counsel), for respondent.



ANDRIAS, J.


Plaintiff alleges that defendant terminated her employment because of her disability in violation of the New York City Human Rights Law (NYCHRL) (Administrative Code of the City of New York § 8—107[1][a]). Supreme Court granted defendant's motion for summary judgment dismissing the complaint, finding that there was no evidentiary route that could allow a jury to find that discrimination played a role in plaintiff's termination. However, giving plaintiff the benefit of all favorable inferences which may reasonably be drawn, we conclude that she proffered sufficient evidence to raise a triable issue of fact as to whether the reason put forth by defendant for terminating her employment was merely pretextual and that the grant of summary judgment in defendant's favor was not warranted.
In 2005, plaintiff began working with defendant's predecessor as a marketing supervisor and was later promoted to marketing manager. In 2009, she was diagnosed with a brain tumor, underwent surgery and returned to work four months later, ahead of the six month to one year's convalescence recommended by her treating physician.
In June 2011, plaintiff experienced a relapse and recurrence of cerebral tumors, which caused her to suffer migraine headaches and vertigo. On June 6, 2011, she informed defendant that she would be out sick due to this condition. On June 20, 2011, plaintiff's family brought plaintiff and her children to their home in Trinidad so that they could assist her and take care of the children until she recovered. That day, plaintiff's doctor also issued a note stating that she would need additional medical leave until July 10, 2011, which was faxed to defendant on June 28.
On July 8, 2011, one of plaintiff's supervisors contacted defendant's human resources (H.R.) department about how to carry plaintiff's time. In response to the supervisor's email of that date, plaintiff called and informed him that she was recovering in Trinidad, and that she could not return to work by July 10.
The supervisor told plaintiff to contact defendant's H.R. benefits analyst. Plaintiff complied, and the analyst told her that due to the length and nature of her absence, she needed to file a claim for short-term disability leave with defendant's disability and leave claims administrator, the Hartford, so that it could verify with her doctor the nature of her medical condition, and confirm or deny her disability leave claim.
Following these instructions, plaintiff called the Hartford's domestic toll free number, but could not get through because she was calling from Trinidad. Plaintiff then called a friend in the United States, who initiated a three-way call with the Hartford so that plaintiff could file her claim. However, plaintiff did not have all of the necessary information at hand and the Hartford told her that she could call back later to initiate a claim seeking retroactive benefits, and then have 15 days to submit supporting documentation.
On July 18, 2011, defendant's lead employee relations specialist sent plaintiff a letter terminating her employment, effective that date. The letter stated cryptically:
"A review of our attendance records indicate that you have been out on an unapproved leave since July 1, 2011. To date you have not contacted Hartford's Short-Term Disability and FML unit to file a claim. After careful review a decision has been made to terminate your employment effective July 18,2011. You may still contact Hartford to file a disability claim on your own."
Upon her return to the United States at the end of July, plaintiff received the termination letter and contacted the lead employee relations specialist. Plaintiff informed the specialist that she wanted to be reinstated and to return to work and was told that she had been terminated for failing to file a disability claim as instructed. At the specialist's suggestion, plaintiff submitted doctor's notes dated June 3, 2011 and August 3, 2011, and a letter explaining what happened. Plaintiff also submitted a Family and Medical Leave Act (FMLA) claim on August 3, 2011, which the Hartford approved on August 15, 2011, for the period commencing on June 20, 2011 until July 20, 2011. Nevertheless, defendant refused to reinstate plaintiff, who commenced this action alleging that defendant discriminated against her in violation of the NYCHRL by discharging her based on her disability or perceived disability.
Section 8—107(1)(a) of the NYCHRL makes it an unlawful discriminatory practice for an employer to discriminate in terms and conditions of employment or discharge an employee because of disability. A "disability" is defined by § 8—102(16) of the NYCHRL as "any physical, medical, mental or psychological impairment." Section 8—107(15)(a) of the NYCHRL provides that an employer has the obligation to "make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job . . . provided that the disability is known or should have been known by the [employer]."
"A request for accommodation need not take a specific form," so the "requests for [*2]accommodation may be in plain English, need not mention the statute, or the term reasonable accommodation and need not be in writing" (Phillips v City of New York, 66 AD3d 170, 189 n24 [1st Dept 2009] [internal quotation marks omitted]). Pursuant to the NYCHRL, there is no accommodation, including indefinite leave or any other need created by a disability, which is excluded from the category of reasonable accommodation
(see Romanello v Intesa Sanpaolo S.p.A., 22 NY3d 881, 884 [2013]).
As a remedial statute, the NYCHRL should be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" (Albunio v City of New York, 16 NY3d 472, 477-478 [2011]). A plaintiff may prove her case if she "proves that unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for an adverse employment decision" (Melman v Montefiore Med. Ctr., 98 AD3d 107, 127 [1st Dept 2012]).
On a motion for summary judgment dismissing a NYCHRL claim, a defendant, as the moving party, bears the burden of showing that, "based on the evidence before the court and drawing all reasonable inferences in plaintiff's favor, no jury could find defendant liable under any of the evidentiary routes [applicable to discrimination cases]" (Bennett v Health Mgt. Sys., Inc., 92 AD3d 29, 45 [1st Dept 2011], lv denied 18 NY3d 811 [2012]). If this burden is met, a plaintiff may defeat summary judgment by offering "some evidence that at least one of the reasons proffered by defendant is false, misleading, or incomplete" (id.; see also Cadet-Legros v New York Univ. Hosp. Ctr., 135 AD3d 196, 200 [1st Dept 2015]). This is because once a plaintiff introduces "pretext" evidence, "a host of determinations properly made only by a jury come into play, such as whether a false[, misleading, or incomplete] explanation constitutes evidence of consciousness of guilt, an attempt to cover up the alleged discriminatory conduct, or an improper discriminatory motive coexisting with other legitimate reasons" (Bennett at 43).
Defendant argues that it met its prima facie burden of establishing a nondiscriminatory motive for its actions by offering evidence that it terminated plaintiff's employment because she did not promptly file a disability claim with the Hartford, as directed. Defendant maintains that although the Hartford may have given plaintiff confusing information about whether she could file a claim later, that phone call was not reported to defendant, and that when defendant decided to terminate her employment, it relied on the Hartford's representation that no claim had been filed. However, when viewed in the light most favorable to plaintiff, the evidence in the record raises a material issue of fact as to whether defendant's stated reason for terminating her employment was a pretext and whether defendant failed to engage in an interactive process and reasonable accommodation analysis prior thereto (see Jacobsen v New York City Health & Hosps. Corp., 22 NY3d 824, 827 [2014] [the NYCHRL generally precludes summary judgment in favor of an employer where the employer has failed to demonstrate that it responded to a disabled employee's request for a particular accommodation by engaging in a good faith interactive process regarding the feasibility of that accommodation]).
There is no question that defendant was apprised of plaintiff's medical condition and her need for medical leave. The record establishes that in June 2011, plaintiff told her supervisor that she would be out sick until July 10 due to the recurrence of her cerebral tumors. On July 8, 2011, she advised the supervisor, and an H.R. officer shortly afterwards, that she was still ill, and requested additional time to convalesce as a reasonable accommodation of her medical condition.
Defendant's response was to have an H.R. officer advise plaintiff that she needed to file a disability claim to be paid. However, the H.R. officer did not tell plaintiff that her employment would be terminated if she did not file the claim within 10 days. While defendant's Leaves of Absence Guide summarizes leave policies that an employee must follow, and warns of the possibility of discharge, it does not specify a time frame within which a claim must be filed with the Hartford.
Moreover, the record, including telephone records and the statements of plaintiff and her friend, supports plaintiff's claim that she did attempt to file a claim with the Hartford, defendant's agent, upon being advised by defendant to do so. While defendant claims that it did not know about this, its H.R. officer admitted during her deposition that, in response to her inquiry, the Hartford acknowledged that it would tell an employee that he or she could call at a later date when they needed to obtain the necessary information in order to file a claim.[FN1]
Furthermore, one may reasonably question how advising plaintiff to file for private disability benefits to get paid would fulfill defendant's legal obligation to "hold a constructive dialogue about the possibility of a reasonable accommodation" (Jacobsen, 22 NY3d at 838 n2) and whether giving an employee suffering from a brain tumor a mere 10 days to file a disability claim before firing her was reasonable.
Significantly, no effort was made by anyone at defendant to contact plaintiff during this short period of time to apprise her of the sudden precariousness of her position, even though such efforts could have been made. While the discharge letter stated that plaintiff was on unapproved leave since July 1, plaintiff was not told to contact the Hartford until July 8, and received no written notification or warning that her leave was unapproved.
Defendant's actions after terminating plaintiff also cast doubt on its stated reason for plaintiff's discharge. Plaintiff was by all accounts a good employee who had an unblemished record and reached her performance goals. Nevertheless, defendant refused to reinstate plaintiff after she informed it that its statement in the termination letter that she never contacted the Hartford was incorrect, and after she filed an application and was ultimately approved for FMLA leave for the period June 20, 2011 to July 20, 2011. Defendant also altered her termination date so that it would fall outside the legally protected FMLA period. Moreover, the record contains numerous emails in which derogatory comments were made about plaintiff and her medical condition and her need for time off to recover. This includes comments such as "[a]pparently, the West Indies is nice this time of year," and accusations that plaintiff was not being treated for her condition in June and July 11 despite the fact that defendant had received medical documentation concerning such treatment.
Given this evidence of a possible pretextual motive, defendants' motion for summary judgment should have been denied (see Duckett v New York Presbyterian Hosp., 130 AD3d 473 [1st Dept 2015]).
Accordingly, the order of the Supreme Court, New York County (David B. Cohen, J.), [*3]entered on or about July 8, 2016, which granted defendant's motion for summary judgment dismissing the complaint, should be reversed, on the law, without costs, and the motion denied.
All concur.
Order, Supreme Court, New York County (David B. Cohen, J.), entered on or about July 8, 2016, reversed, on the law, without costs, and the motion denied.
Opinion by Andrias, J. All concur.
Friedman, J.P., Tom, Andrias, Gesmer, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 9, 2018
CLERK



Footnotes

Footnote 1:Defendant's employee relations analyst testified that he was informed that defendant checked with the Hartford after plaintiff was told to contact it, but the carrier could not confirm whether plaintiff had filed a claim, or made any communication attempting to file a claim.