RIVERA, J. (concurring).
I agree that the Appellate Division should be reversed because, on this record, petitioner Jonas Aponte failed to establish that the New York City Housing Authority (NYCHA) erred in denying him remaining family member status or that he was discriminated against due to his mother's disability. I write separately to address petitioner's associational discrimination claim, which I believe is properly before us, even if the claim ultimately fails on the merits. I also write to address NYCHA's apparent policy and practice of treating identically all disabled tenants who request a full-time *469 caretaker, without first engaging in the interactive process required by law to determine the tenant's needs and what constitutes a reasonable accommodation under the particular circumstances of each case. This one-size-fits-all approach violates the agency's obligations under the Americans with Disabilities Act ( 42 USC § 12112 ), the New York State Human Rights Law ( Executive Law § 296 ), and the New York City Human Rights Law (Administrative Code of City of N.Y. § 8-107).
The facts that gave rise to this case disclose a striking and inexcusable breakdown in NYCHA's procedures for providing reasonable accommodations to people with disabilities. Petitioner's mother had advanced dementia. She repeatedly advised NYCHA that she needed her son to live with her as a full-time caretaker in order to accommodate her disability.[1]
***700 Nevertheless, NYCHA failed to refer Ms. Aponte's case to NYCHA's Reasonable Accommodations Coordinator, failed to provide Ms. Aponte or her son with an explanation of the accommodation services available to Ms. Aponte, failed to engage Ms. Aponte or her son in an interactive process to determine the scope of Ms. Aponte's disability or what accommodations would allow her to enjoy equal use of her apartment, and failed even to expressly provide her son with Temporary Residency status, which NYCHA concedes he was entitled to as his mother's caretaker. Indeed, NYCHA denied Ms. Aponte's requests that petitioner be added to her household, even though she informed NYCHA that her disability-dementia-was cognitive, rendering it uncertain whether she could fully appreciate NYCHA's explanations for its denial.
Notwithstanding these facts and NYCHA's plain failures, NYCHA, admitting that its process could have been better, states that it nevertheless effectively accommodated Ms. Aponte's disability by awarding her son "de-facto temporary status." This post-hoc, ad-hoc rationalization merely obfuscates NYCHA's actual behavior. The agency did not even attempt to provide Ms. Aponte with the accommodation she requested. Mr. Aponte was only able to reside in his mother's apartment as her full-time caretaker because of mistakes or oversights by the agency's personnel. In other words, petitioner was able to care for his mother in her home because NYCHA violated its own rules. NYCHA's failure to follow its policies is not an acceptable *470 approach to reasonable accommodation.
I agree that whether NYCHA failed to reasonably accommodate Ms. Aponte in violation of the law is not properly before us (majority op. at 698, 70 N.Y.S.3d at 905-06, 94 N.E.3d at 467-68). NYCHA's failure to accommodate Ms. Aponte's disability was not raised as part of the administrative hearing underlying this appeal, nor could petitioner have raised this claim on his mother's behalf (see Matter of Rivera v. New York City Hous. Auth., 60 A.D.3d 509, 876 N.Y.S.2d 3 [1st Dept. 2009], citing ***701 Willson v. Association of Graduates of the U.S. Military Academy, 946 F.Supp. 294, 296 [S.D.N.Y.1996] ). However, petitioner has set forth a colorable claim for associational discrimination in his own right (see 42 USC § 12112 [b][4]; Administrative Code of City of N.Y. § 8-107[20]; Dunn v. Fisbhein, 123 A.D.2d 659, 507 N.Y.S.2d 29 [2d Dept. 1986] ; Loeffler v. Staten Island University Hosp., 582 F.3d 268, 279-283 [2d Cir.2009] [Wesley, J. concurring] ).
Turning to the merits of his claim, petitioner has failed to establish how he was discriminated against based on his association with his disabled mother. Petitioner was, in fact, allowed to live with his mother and care for her until the time of her death. Under these circumstances, petitioner has not shown that the denial of permanent residency status was related to his association with his disabled mother. Further, the record does not establish that petitioner was adversely affected by the agency's failure to award him the temporary residency status to which he was entitled under NYCHA's own policy. Petitioner may well have experienced fear, upset, and uncertainty as he cared for his mother under the threat of imminent removal, but he has not established entitlement to the specific relief he now seeks, namely succession rights to his mother's apartment.
It bears noting that NYCHA goes too far, however, when it argues that no set of facts would have allowed petitioner to be added to his mother's household as an accommodation for her disability. This conclusion is unsubstantiated, since NYCHA never made any effort to determine what accommodation was warranted.[2] The law is clear that every decision about what constitutes a reasonable accommodation is fact-specific and fact-intensive (see Noll v. Intern. Business Machines Corp., 787 F.3d 89, 94 [2d Cir.2015] ). The Americans with Disabilities Act and the New York State Human Rights Law both clearly require this individualized consideration (see ***702 Jacobsen v. New York City Health & Hosps. Corp., 22 N.Y.3d 824, 836, 988 N.Y.S.2d 86, 11 N.E.3d 159 [2014] ; Noll, 787 F.3d at 94 ), and the New York City Human Rights Law, as we have repeatedly held, goes even further (see Chauca v. Abraham, 30 N.Y.3d 325, 336-36, 67 N.Y.S.3d 85, 89 N.E.3d 475 ; Jacobsen, 22 N.Y.3d at 837-838, 988 N.Y.S.2d 86, 11 N.E.3d 159 ). Even assuming, arguendo, that NYCHA may rely on general presumptions and categorizations to guide its *471 determinations, procedures to ease the agency's administrative burden cannot substitute for the individualized consideration required by law. It is one thing not to engage in the required interactive process in an individual case, quite another to foreclose the interactive process on a class-wide basis (see Jacobsen 22 N.Y.3d at 836-838, 988 N.Y.S.2d 86, 11 N.E.3d 159 [observing that, although a judgment of discrimination on the basis of disability cannot be "solely based on the ... failure to engage in an interactive process," reasonable accommodation requests "must (be) give(n) individualized consideration"] ). In other words, NYCHA may rely on a policy that considers waiver of its overcrowding rules as a possible accommodation for full-time caretakers, but it cannot adopt that rule as its "default" position in all cases without any consideration of the individual tenant, or shift its burden by requiring the tenant to explain why its "default" accommodation is unreasonable.
As the Appellate Division observed, we will never know what accommodation Ms. Aponte may have needed and how NYCHA could have complied with its legal obligations to ensure her enjoyment of her apartment on an equal basis to nondisabled tenants. It appears Ms. Aponte received what she essentially wanted-the care of her son until the time of her death. However, this was not a result of NYCHA's reasonable accommodation of her disability. Our antidiscrimination laws make clear that the treatment NYCHA meted out to Ms. Aponte and her son was unacceptable. While in this specific case NYCHA did not technically violate its obligations under our federal, state, and local laws prohibiting discrimination on the basis of disability, the policies and rationalizations the agency has advanced in these proceedings raise profound concerns. Unless NYCHA changes its approach, it risks future cases in which it may not be so fortunate as to avoid liability based on the mistreatment of disabled persons and their full-time caretakers.
Order reversed, without costs, and order of Supreme Court, New York County, reinstated.
***703 Chief Judge DiFiore and Judges Stein, Fahey, Garcia and Feinman concur.
Judge Rivera concurs in result in an opinion.

As the majority observes (majority op. at 698-699, 70 N.Y.S.3d at 905-06, 94 N.E.3d at 467-68), Ms. Aponte never checked the box on her 2011 affidavit of income specifically requesting an accommodation for her disability, and, indeed, checked a different box affirming that, although there was someone in her household with a disability, she was not requesting the Housing Authority provide her with an accommodation. However, this affidavit of income must be considered in context. On the very same affidavit, Ms. Aponte notified NYCHA that her son was a person living in the apartment and explained again that she suffered from a "mental or psychological disability," further indicating she had Alzheimer's disease and dementia. In light of the foregoing, her affidavit cannot be read as an express abandonment of her request that her son live with her because she could not care for herself. No magic words are necessary to place NYCHA on notice that a disabled tenant requests a reasonable accommodation; a tenant need not use the words "reasonable accommodation" or even reference applicable antidiscrimination laws (see e.g. Requesting Reasonable Accommodation, EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the American with Disabilities Act [October 17, 2002] [observing that requests for accommodation need not mention the ADA or use the words "reasonable accommodation"] ). On this record, the repeated requests NYCHA received to add petitioner to his mother's household are properly framed as requests for a necessary disability accommodation.

As NYCHA conceded during oral argument, had Ms. Aponte established her need for essential medical equipment, she might have been entitled to a larger apartment as an accommodation for her disability, which would have removed one of the grounds for denying the request to add Mr. Aponte to her household. In a similar vein, amicus AARP suggests other scenarios in which a proper accommodation may be to grant caretakers the assurance of residency in a NYCHA apartment, lest the agency "risk consigning the aging resident to worse health outcomes and eventually an institution" (see brief for AARP and AARP Foundation as amici curiae supporting petitioner-respondent at 14-19 [quotation on 19] ).