Town of Aurora v Village of E. Aurora (2018 NY Slip Op 07923)

Town of Aurora v Village of E. Aurora

2018 NY Slip Op 07923 [32 NY3d 366]

November 20, 2018

Stein, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, February 13, 2019

[*1]

Town of Aurora, a Municipal Corporation, Respondent,
v
Village of East Aurora, a Municipal Corporation, Appellant.

Argued October 10, 2018; decided November 20, 2018

Town of Aurora v Village of E. Aurora, 149 AD3d 1506, modified.

{**32 NY3d at 369} OPINION OF THE COURT

Stein, J.

On this appeal, we are asked to determine which party, plaintiff Town of Aurora or defendant Village of East Aurora, is responsible for the maintenance and repair of the Brooklea Drive Bridge, located within both of the municipalities. Because the Village did not assume control of the bridge pursuant to Village Law § 6-606—which sets forth the exclusive methods by which a village may assume control and supervision of a bridge unless said bridge was under village control prior to 1897 (see Village Law § 6-604)—we hold that the Town is responsible for maintaining the Brooklea Drive Bridge.
In 1971, the Village Board of Trustees approved construction and financing of the Brooklea Drive Bridge in connection with the development of a residential subdivision. Construction was completed by October 1973. Over the next several decades, the{**32 NY3d at 370} bridge remained, without any apparent repair or modification. Beginning in 2006, the New York State Department of Transportation (DOT) issued yearly structural bridge reports to the Village, flagging the bridge as being in need of repair. The Village undertook no repairs and, in 2010, after receiving several such [*2]reports, ultimately informed DOT that the Town was responsible for repairing the bridge. Thereafter, DOT notified the Town that it was responsible for maintaining the bridge and sent it flagged bridge reports for the next three years.
The Town commenced this action, seeking a judgment declaring the Village solely responsible for the supervision, control, care, and maintenance of the Brooklea Drive Bridge. The Town asserted that the Village's control was evidenced by its unilateral construction of the bridge, its uninterrupted exclusive supervision and control thereof, and its failure to properly relinquish control to the Town pursuant to Village Law § 6-608. The Village answered and counterclaimed, arguing that it had never assumed control, care, and maintenance of the bridge in accordance with Village Law § 6-606, and requesting a declaration that the Town was responsible for the costs of the repairs ordered by DOT.
The Town moved for summary judgment and, in support thereof, submitted minutes of the Village Board of Trustees' meetings and other records demonstrating the Village's role in approving and constructing the bridge. The Village cross-moved for summary judgment, proffering an affidavit from the Village Clerk/Treasurer, wherein she averred that the Village had never adopted any resolutions, or taken any actions in connection with permissive referendums, in relation to assuming control over the bridge.
Supreme Court denied the Town's motion for summary judgment, dismissed the complaint, granted the Village's cross motion, directed entry of judgment on the Village's counterclaim, and declared both that the Village had never assumed control of the Brooklea Drive Bridge in accordance with Village Law § 6-606 and that the Town was responsible for the maintenance of any other bridge located in the Village with respect to which the Village had not assumed control under section 6-606. Following the Town's appeal, the Appellate Division reversed, reinstated the complaint, granted the Town's motion for summary judgment, and denied the Village's cross motion (149 AD3d 1506 [4th Dept 2017]). That Court declared "that the Village . . . [wa]s responsible for the supervision, control, care,{**32 NY3d at 371} and maintenance of the . . . bridge" because the Village had "planned, financed, and constructed" the bridge and "was the only entity ever to exercise . . . supervision and control" over it (149 AD3d at 1507). The Court further held that the Village was not entitled to a declaration regarding any other bridges in its boundaries (see id. at 1508). We granted the Village leave to appeal (29 NY3d 919 [2017]).
In its current form, Village Law § 6-604 provides that,
"[i]f the board of trustees of a village has the supervision and control of a bridge therein, it shall continue to exercise such control under this chapter. In any other case, every public bridge within a village shall be under the control of the . . . town in which the bridge is wholly or partly situated, . . . and the expense of constructing and repairing such bridge and the approaches thereto is a town charge, unless the village assumes the whole or part of such expense."
The latter part of section 6-604 states the long-established general rule that "[a]ll bridges within a village . . . are expressly made the responsibility of the town, unless the village has voluntarily assumed responsibility therefor" (Matter of Village of Chestnut Ridge v Howard, 92 NY2d 718, 724 [1999]; see Village Law § 6-604; Highway Law § 140).
Village Law § 6-606, entitled "[w]hen [a] village may construct or repair bridges," states, as relevant here, that
"[a] village may assume the control, care and maintenance of a bridge or bridges wholly within its boundaries, upon the adoption of a resolution of the board of trustees therefor; such action, however, shall be subject to a permissive referendum as provided in this chapter or the board of trustees may enter into an agreement with the town, in which any part of such village is situated, to construct or repair a bridge in any part of the village included in such town, at the joint expense of the village and town, which [*3]agreement shall fix the portion to be paid by each. Such action of the board of trustees shall be subject to a permissive referendum as provided in this chapter."
This provision, by its plain terms, sets forth an exception to the general rule that a town is responsible for all bridges within{**32 NY3d at 372} its boundaries by permitting a village to assume control over a bridge through the adoption of a resolution by its board of trustees or an express agreement with the town, both of which are subject to permissive referendums.
Here, the Village argues that the Town is responsible for the repair and maintenance of the Brooklea Drive Bridge because the Village never assumed supervision and control over the bridge through either mechanism outlined in Village Law § 6-606. In response, the Town asserts that the procedures set forth in section 6-606 are not the exclusive methods by which a village may obtain control of a bridge. The Town further contends that, in any event, the Village has supervision and control of the bridge pursuant to the first sentence of Village Law § 6-604.
"[W]hen presented with a question of statutory interpretation, our primary consideration is to ascertain and give effect to the intention of the Legislature" (Samiento v World Yacht Inc., 10 NY3d 70, 77-78 [2008], quoting Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]). As we have often explained, because "the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]; see Matter of Avella v City of New York, 29 NY3d 425, 434 [2017]). "We are also guided in our analysis by the familiar principle 'that a statute . . . must be construed as a whole and that its various sections must be considered together and with reference to each other' " (Matter of New York County Lawyers' Assn. v Bloomberg, 19 NY3d 712, 721 [2012], quoting People v Mobil Oil Corp., 48 NY2d 192, 199 [1979]). "Additionally, we should inquire 'into the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history' " (Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106, 120 [2012], quoting Nostrom v A.W. Chesterton Co., 15 NY3d 502, 507 [2010]).
[1] The Town argues, and the Appellate Division held, that a village has discretion to assume control of bridges in ways other than those enumerated in Village Law § 6-606. We disagree. " '[W]here a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was{**32 NY3d at 373} intended to be omitted or excluded' " (Matter of Town of Riverhead v New York State Bd. of Real Prop. Servs., 5 NY3d 36, 42-43 [2005], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 240, Comment at 411-412 [1971 ed]; see Pajak v Pajak, 56 NY2d 394, 397 [1982]). Here, the legislature has limited the methods by which a village may assume control of a bridge by establishing specific procedures to be followed.[FN1] Had the legislature intended for a village to have the ability to unilaterally construct, and thereby control, a bridge—without regard to the passage of resolutions, agreements with the town, or permissive referendums—the legislature could easily have so stated, and its failure to do so compels the conclusion that such other methods of assuming control are ineffective (see Pajak, 56 NY2d at 397; McKinney's Cons Laws of NY, Book 1, Statutes § 74).
Moreover, contrary to the Town's assertion, the legislature's use of the word "may" in Village Law § 6-606 reflects only that a village has discretion in choosing whether to assume control of a bridge—since the default rule under section 6-604 is that towns are responsible for bridges within their boundaries—not that a village has discretion regarding how to assume such responsibility. That is, a village may assume control and supervision of a bridge if it [*4]elects to do so but, because the legislature has precluded villages from obtaining control through other means by establishing specifically authorized mechanisms in Village Law § 6-606, a village must follow the procedures outlined in that statute.
The Town claims that, in addition to assuming control pursuant to Village Law § 6-606, a village may be responsible for a bridge under the first clause of section 6-604 merely because that village has exercised exclusive supervision and control thereof, without regard to when the bridge was constructed. This argument is unavailing. In pertinent part, Village Law § 6-604 sets forth an exception to section 6-606—namely, that "[i]f the board of trustees of a village has the supervision and control of a bridge therein, it shall continue to exercise such control under this chapter." However, section 6-604 does not {**32 NY3d at 374}explain how a village may have previously secured supervision and control of a bridge under that provision. A review of the history of Village Law § 6-604 sheds light on that question and reveals that the clause operates only as an exemption clause for bridges existing prior to 1897; it does not authorize a separate continuing means by which a village may assume supervision and control over a bridge.
" '[T]he history of the times, the circumstances surrounding the statute's passage, and . . . attempted amendments' " are, of course, "[p]ertinent" to matters of statutory interpretation (Riley v County of Broome, 95 NY2d 455, 464 [2000], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 124, Comment at 253 [1971 ed]). In that regard, the content of Village Law §§ 6-604 and 6-606 was first codified in Village Law §§ 142 and 143, enacted in 1897 (see L 1897, ch 414). In its original form, section 142—which later became section 6-604—provided that,
"[i]f at the time this chapter takes effect, the board of trustees of a village has the supervision and control of a bridge therein, it shall continue to exercise such control under this chapter. In any other case, every public bridge within a village shall be under the control of the . . . town . . . and the expense of constructing and repairing such bridge . . . is a town charge, unless the village assumes the whole or part of such expense" (L 1897, ch 414, § 142 [emphasis added]).
The highlighted prefatory language establishes that villages had, and would continue to have, supervision and control over those bridges that were already constructed and supervised by villages in 1897, before the legislature's adoption through section 143 (the substance of which was later largely transferred to Village Law § 6-606) of limited and specific statutory methods of assuming control (see L 1897, ch 414, § 143). By inclusion of the phrase "[i]f at the time this chapter takes effect," the legislature signaled its intent to continue to recognize village control over those bridges already under village control at the time sections 142 and 143 were enacted, which bridges were thereby excluded from the new limitations placed on the manner in which villages could henceforth acquire control of bridges under section 143 (L 1897, ch 414, § 142). Thus, as originally enacted, section 142 could not reasonably be read to provide a method by which villages could assume control of a bridge, absent compliance with section 143, after 1897.{**32 NY3d at 375}
Significantly, the language limiting application of the first sentence of Village Law § 142 to those bridges already controlled by villages in 1897 remained in the statute until 1973, at which time the legislature undertook a general revision and renumbering of the Village Law (see former Village Law § 142 [1966 ed superseded in 1973]). Thus, until at least 1973, the methods of assuming control set forth in Village Law § 143 (later transferred to section 6-606) governed, absent existing village control established prior to 1897. Indeed, both the Attorney General and the New York State Comptroller have interpreted the Village Law in this manner—both prior to and following the 1973 revision of the Village Law (see 1974 Ops Atty Gen 300; 1969 Ops Atty Gen 106; 1964 Ops St Comp No. 64-305; 1960 Ops Atty Gen 205).
It is true that, when the legislature recodified Village Law § 142 as section 6-604 effective in 1973, it omitted the prefatory language referring to the time that section 142 took effect (see L 1972, ch 892, § 3; Village Law § 6-604). However, "[i]t is a cardinal principle of statutory interpretation that the intention to change a long-established rule or principle is not to be imputed to the legislature in the absence of a clear manifestation" (Matter of Delmar Box Co. [Aetna Ins. Co.], 309 NY 60, 66 [1955]; see McGowan v Mayor of City of N.Y., 53 NY2d 86, 94 [1981]). In addition, where—as here—there are slight changes in the language of a statute as part of a general revision, "a change in the manner of expression does not necessarily indicate a change in meaning" because "where the law, as it [*5]previously stood, was settled either by adjudication or by frequent application of the statute without question, a mere change in the phraseology is not to be construed as a change in the law, unless the purpose of the legislature to work a change is clear and obvious" (Henavie v New York Cent. & Hudson Riv. R.R. Co., 154 NY 278, 281 [1897]). Stated differently, "where the Legislature votes a general revision of a code with hundreds of changes[,] we will not interpret a minor change in language to indicate a [change in] meaning unless legislative purpose so to change the meaning is clear" (Schneider v Schneider, 17 NY2d 123, 127 [1966]).
We must "give the statute a sensible and practical over-all construction, which is consistent with and furthers its scheme and purpose and which harmonizes all its interlocking provisions" (Matter of Long v Adirondack Park Agency, 76 NY2d 416, 420 [1990]). Consequently, we will not interpret the{**32 NY3d at 376} legislature's omission of the prefatory language from Village Law § 6-604 during its general revision of that body of law as intending a substantive change that would, without explanation or proof of intent, drastically alter the statutory scheme and introduce significant uncertainty into the law governing the control of bridges. Rather, it is likely that the legislature omitted the reference to 1897 in light of the significant passage of time—over 75 years—deeming a reference to the effective date of the predecessor statute no longer necessary. In fact, to conclude otherwise would be to countenance an "absurd result that would frustrate the statutory purpose" of clearly delineating which municipal entities are responsible for the care of bridges (id.; see New York State Psychiatric Assn., Inc. v New York State Dept. of Health, 19 NY3d 17, 26 [2012]). More specifically, the Town's interpretation would mean that, from 1897 to 1973, a village could not obtain control over a bridge without following the strictures of Village Law § 143 or Village Law § 6-606 but, from 1973 forward, a village could gain control of a bridge simply by undertaking some undefined degree of maintenance or supervision. This cannot be. Moreover, the Town's interpretation would disenfranchise village residents who—since 1897—have had a statutory right to challenge a decision by a village government to assume control of a bridge.
In short, pursuant to Village Law §§ 6-604 and 6-606, if a village did not have control and supervision of a bridge prior to 1897, there are two ways in which a village may assume control—namely by passing a resolution, subject to a permissive referendum, or by entering into an agreement with the town, also subject to a permissive referendum. On the facts presented here, there is no viable claim that the Village assumed control of the Brooklea Drive Bridge prior to 1897 since the bridge was not yet in existence. Further, there is no claim that the Town and Village entered into an agreement to fix control of the bridge. Finally, while the Village may have passed resolutions related to the construction and financing of the bridge, the Village's submissions in support of its motion for summary judgment establish—without contradiction—that the procedures for a permissive referendum were never undertaken (see Village Law § 9-900). Thus, the Village does not have control over the Brooklea Drive Bridge under the statutory scheme. Pursuant to section 6-604, the bridge is, therefore,{**32 NY3d at 377} under the control of the Town, and the Village is entitled to the declaration sought regarding that bridge.[FN2]
[2] To the extent the Village also seeks a declaration regarding the rights of the parties with respect to other bridges located in the Village, no such declaration should issue. Even assuming that the matter of other bridges was properly raised by the Village before the trial court, the Village is not entitled to a declaration beyond that relating to the Brooklea Drive Bridge because the facts pertaining to other bridges are not before the Court. "Until disputed questions of fact necessary to be determined before judgment can be rendered are settled, it is plain that rights and legal relations cannot be determined, defined and declared" (Rockland Light & Power Co. v City of New York, 289 NY 45, 50 [1942] [internal quotation marks and citation omitted]).
[*6]
Accordingly, the order of the Appellate Division should be modified, without costs, by (1) denying plaintiff Town of Aurora's motion for summary judgment, (2) granting defendant Village of East Aurora's motion for summary judgment, only to the extent it sought a declaration in its favor as to the Brooklea Drive Bridge, and (3) reinstating so much of the judgment of Supreme Court as declared the Town of Aurora is responsible for the expenses of repairing the Brooklea Drive Bridge, and, as so modified, affirmed.

Fahey, J. (dissenting in part). I respectfully dissent in part. The Village of East Aurora unilaterally built an access bridge to a Village neighborhood over 40 years ago. It did so without any participation by the Town of Aurora. It never relinquished control or authority over that bridge. After the New York State Department of Transportation (DOT) told the Village that safety repairs were needed, the Village responded by claiming the Town was really the responsible party. This is simply a bridge too far.
I agree with the majority there is no basis upon which to issue "a declaration beyond that relating to the Brooklea Drive Bridge because the facts pertaining to other bridges are not{**32 NY3d at 378} before the Court" (majority op at 
377). I disagree with the majority, however, that Village Law § 6-606 establishes "the exclusive methods by which a village may assume control and supervision of a bridge unless said bridge was under village control prior to 1897" (majority op at 
369).
Under the Village Law it was not necessary for defendant, the Village of East Aurora, to pass a resolution pursuant to Village Law § 6-606 to assume the control, care, and maintenance of the Brooklea Drive Bridge (generally, bridge). Moreover, the Village never was divested of the exclusive supervision and control over the bridge that it assumed in erecting that structure. Under the circumstances of this case I would conclude that the responsibility for the bridge in question rests not with plaintiff, the Town of Aurora, but with the Village.
In 1961, the Brooklea Farms subdivision was developed within the Village. With the subsequent growth of the subdivision came the need for additional means of access for area residents. The Village's Board of Directors [*7]planned, approved, and constructed the bridge. It was completed in October 1973.[FN1] The bridge sits entirely within the Village, and no repairs to that structure have been made since it was completed.
In May 2006, the DOT issued a report noting a dangerous structural condition with respect to the bridge that required correction. That condition, however, went unaddressed through May 2010, when the Village began to posit that, pursuant to Village Law § 6-604, the Town is responsible for the repair of that structure. The Town subsequently commenced this action seeking, among other things, judgment declaring that the Village "is responsible for the supervision, control, care and maintenance of the [subject bridge]."
Like the Appellate Division (149 AD3d 1506, 1507 [4th Dept 2017]), I agree with the Town that "responsibility for the [bridge] properly rests with the Village." Review of the question of the responsibility for the bridge begins with Village Law § 6-604, which took effect on September 1, 1973 (see L 1972, ch 892, § 3) and which provides, in simple terms, that if a village has supervision and control of a bridge within its boundaries, then it shall continue to maintain that responsibility. By contrast, under the same statute, if a village does not have{**32 NY3d at 379} that control, then responsibility for the construction and repair of a bridge rests with the superintendent of highways of the town in which the bridge wholly or partially sits.
The relevant part of Village Law § 6-604 specifically provides that
"[i]f the board of trustees of a village has the supervision and control of a bridge therein, it shall continue to exercise such control . . . . In any other case, every public bridge within a village shall be under the control of the [superintendent] of highways of the town in which the bridge is wholly or partly situated, or such other officer as may be designated by special law, and the expense of constructing and repairing such bridge and the approaches thereto is a town charge, unless the village assumes the whole or part of such expense" (emphasis added).
Attention next turns to Village Law § 6-606, which also took effect on September 1, 1973 and which considers the vesting of control over bridges. That statute provides that "[a] village may assume the control, care and maintenance of a bridge . . . wholly within its boundaries, upon the adoption of a resolution of the board of trustees therefor" (Village Law § 6-606; see L 1972, ch 892, § 3).
Our primary task on this appeal is to determine whether the permissive resolution mechanism in Village Law § 6-606 is the only means by which a village may assume control of a bridge. It is not. The Appellate Division analyzed this issue succinctly and correctly: "[a]lthough Village Law § 6-606 provides that a village 'may' obtain control of a bridge by a resolution of its board, it does not provide that a village 'may only' obtain control by that method" (149 AD3d at 1508, citing Village Law § 6-606). That conclusion follows classic rules of statutory interpretation: the clearest indicator of legislative intent is the statutory text (see Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]), and "an irrefutable inference must be drawn that what is omitted or not included [in a statute] was intended [by the legislature] to be omitted or excluded" (Matter of Alonzo M. v New York City Dept. of Probation, 72 NY2d 662, 665 [1988] [internal quotation marks omitted]). If the legislature intended Village Law § 6-606 to serve as the exclusive means for a village to gain control of a bridge, then it would have provided as much, by simply stating either{**32 NY3d at 380} that a village "assumes" control when it complies with the mechanism described in section 6-606 or that a village "may only" obtain control when it does so.
Legislative omission is relevant to this case for another reason. In 1897 the legislature enacted Village Law former § 142, which provided, in pertinent part, that
"[i]f[,] at the time this chapter takes effect, the board of trustees of a village has the supervision and control of a bridge therein, it shall continue to exercise such control under this chapter. In any other case, every public bridge within a village shall be under the control of the commissioners of highways of the town in which the bridge is wholly or partly situated . . . , and the expense of constructing and repairing such bridge . . . is a town charge, unless the village assumes the whole or part of such expense" (L 1897, ch 414, § 142 [emphasis added]).
That law was repealed in 1972 and replaced at that time by Village Law § 6-604. Absent from section 6-604 is language providing that control of a bridge automatically vests with a town unless a village subsumed within such a municipality had control of a disputed bridge prior to 1897. That is, in section 6-604, the legislature omitted the "at the time this chapter takes effect" language that had been incorporated into Village Law former § 142, meaning that, in the absence of a permissive referendum pursuant to Village Law § 6-606, control of the bridge does not default to the Town simply because the Village built that structure after 1897.[FN2] To conclude otherwise would be to ignore the plain language of Village Law § 6-604 and to settle on a construction yielding the absurd result that a village may "unilaterally [erect] and maintain a bridge only to later disclaim responsibility when repair costs [arise]" (149 AD3d at 1508; see generally People v Pabon, 28 NY3d 147, 156 [2016]; McKinney's Cons Law of NY, Book 1, Statutes § 145).
It is undisputed that the Village planned, financed, constructed, and benefited from the bridge since its completion,{**32 NY3d at 381} and that the Town has not maintained that structure. Under the relevant parts of the Village Law, the Village should now be responsible for that structure. I would affirm the Appellate Division order.
Chief Judge DiFiore and Judges Wilson and Feinman concur; Judge Fahey dissents in part and votes to affirm in an opinion, in which Judges Rivera and Garcia concur.
Order modified, without costs, by (1) denying plaintiff Town of Aurora's motion for summary judgment, (2) granting defendant Village of East Aurora's motion for summary judgment only to the extent it sought a declaration in its favor as to the Brooklea Drive Bridge, and (3) reinstating so much of the judgment of Supreme Court, Erie County, as declared the Town of Aurora is responsible for the expenses of repairing the Brooklea Drive Bridge, and, as so modified, affirmed.

Footnotes

Footnote 1:This is also reflected by the legislative caveat in Village Law § 6-606 stating that "[n]othing in . . . section [6-606] shall be deemed to limit the power of villages to enter into agreements for the construction and repair of bridges pursuant to the provisions of article five-G of the general municipal law"; this provision would be unnecessary if section 6-606 was not otherwise exclusive.

Footnote 2:We do not disregard the Town's assertion that the statutes produce an arguably unfair result ensuing from the failure of a village to act in accordance with Village Law § 6-606 and its construction of a bridge without the appropriate statutory authority. We note, however, that in such instances the town may pursue legal remedies to prevent construction of the bridge, or its use thereafter, by a village that has not complied with section 6-606.

Footnote 1:The parties do not dispute that the bridge was not completed until after Village Law § 6-604 became effective on September 1, 1973 (see L 1972, ch 892, § 3).

Footnote 2:The fact that the legislature chose not to cabin through Village Law § 6-606 the power of villages to enter into contracts for the construction and repair of bridges under article 5-G of the General Municipal Law is of no moment; through that article the legislature, among other things, authorized the municipalities to contract "out" certain services to other municipal entities (cf. majority op at 
373 n 1).