Matter of Jahvani Z. (Thomas V.--Mariah Z.) (2019 NY Slip Op 00008)





Matter of Jahvani Z. (Thomas V.--Mariah Z.)


2019 NY Slip Op 00008


Decided on January 3, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 3, 2019

524807

[*1]In the Matter of JAHVANI Z., Alleged to be a Permanently Neglected Child. THOMAS., Respondent; MARIAH Z., Appellant. (And Another Related Proceeding.)

Calendar Date: November 20, 2018

Before: Garry, P.J., Mulvey, Aarons, Rumsey and Pritzker, JJ.


Michelle I. Rosien, Philmont, for appellant.
Chaffee & Linder, PLLC, Bath (Ruth A. Chaffee of counsel), for respondent.
Allen E. Stone, Vestal, attorney for the child.



MEMORANDUM AND ORDER
Mulvey, J.
Appeals from two orders of the Family Court of Broome County (Connerton, J.), entered March 8, 2017 and June 15, 2017, which, among other things, granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondent's parental rights.
Respondent, then age 17, gave birth to a child in 2013 who was temporarily removed from her care in 2014 following the filing of a neglect petition. Respondent later admitted that she had neglected the child by engaging in domestic violence with her mother in the presence of the then-infant child. Respondent consented to certain dispositional terms requiring, among other conditions, that she obtain services. The child was initially placed with the maternal grandfather until, in October 2014 following a dispositional hearing, the child was placed with petitioner, the maternal great uncle (hereinafter the uncle), as a relative placement pursuant to Family Ct Act § 1055, consistent with respondent's expressed wishes. The child has since resided with the uncle and his long-term fiancée, who live in the City of Corning, Steuben County, where respondent intermittently visited the child, which involved traveling from her home in the City of Binghamton, Broome County. In April 2016, the uncle filed a permanent neglect petition seeking to terminate respondent's parental rights. Respondent, in turn, filed a cross petition for the return of the child to her custody. The child's father, then incarcerated, surrendered his parental rights, signing a judicial consent to the adoption of the child by the uncle and his fiancée in September 2016. Following a fact-finding hearing, Family Court found that [*2]the child had been permanently neglected and, after a dispositional hearing, terminated respondent's parental rights. Respondent now appeals.
We affirm. Initially, to the extent that respondent appeals from the fact-finding order, that appeal must be dismissed as no appeal lies as of right from a nondispositional order in a permanent neglect proceeding (see Matter of Keadden W. [Hope Y.], 165 AD3d 1506, 1507 [2018]). Nonetheless, respondent's appeal from the dispositional order brings up for review the issues raised regarding the fact-finding order (see id.).
As a threshold matter, respondent argues that the uncle lacked standing to commence this proceeding. We disagree. Social Services Law § 384-b provides that custody of a child may, by court order, be committed to an authorized agency, a foster parent or "a relative with care and custody of the child" (Social Services Law § 384-b [3] [a]; see Matter of Cadence SS. [Amy RR.—Joshua SS.], 103 AD3d 126, 128 [2012], lv denied 21 NY3d 853 [2013]). As we previously held, "[t]hat statute specifically provides that proceedings to terminate parental rights 'may be originated by an authorized agency or by a foster parent . . . or by a relative with care and custody of the child'" (Matter of Cadence SS. [Amy RR.—Joshua SS.], 103 AD3d at 128, quoting Social Services Law § 384-b [3] [b]). Contrary to respondent's contention, the uncle was "a relative with care and custody of the child" who was authorized to commence this permanent neglect proceeding pursuant to Social Services Law § 384-b (3) (b) (cf. Matter of Cadence SS. [Amy RR.—Joshua SS.], 103 AD3d at 128). Although the plain language of the statute points to this conclusion, we also note that the legislative history regarding the relevant 1994 amendments to Social Services Law § 384-b (3) supports this conclusion (see L 1994, ch 601, Governor's Program Bill Mem, Bill Jacket at 2, 4; Governor's Approval Mem, Bill Jacket, L 1994, ch 601 at 10; see generally Town of Aurora v Village of E. Aurora, ___ NY3d ___, ___, 2018 NY Slip Op 07923, *2 [2018]). Respondent's reliance upon other statutory provisions governing Family Court's authority or obligation to issue orders under certain circumstances (see Social Services Law § 384-b [3] [a]) and regarding who may initiate a petition to terminate parental rights when the authorized agency fails to do so as court ordered in certain circumstances (see Social Services Law § 384-b [3] [l] [i], [iv]; Family Ct Act §§ 1055 [d]; 1089 [d] [2] [viii] [E]) is misplaced. Those provisions do not override the express authority granted by Social Services Law § 384-b (3) (b) to "a relative with care and custody of the child" to initiate parental termination proceedings.[FN1]
Respondent claims that she was not provided notice, at the time that she agreed to the placement of the child with the uncle in 2014, that her rights could later be terminated. The child was placed in the care and custody of the uncle pursuant to Family Ct Act § 1055 by Family Court's 2014 dispositional order in the earlier neglect matter, custody was continued in subsequent permanency orders, and the uncle was thereafter approved as a foster parent and placement was continued in that capacity. To the extent that respondent raises claims directed at the 2014 neglect proceedings, they are not properly before us as respondent appealed here only from the 2017 orders in the permanent neglect matter (see Matter of Stephen N. [William O.], 105 AD3d 1109, 1109 [2013]). With regard to the permanent neglect proceeding, the petition that resulted in the termination of respondent's parental rights expressly and unmistakably notified her, as relevant here, that "IF THIS PETITION IS GRANTED, YOU MAY LOSE YOUR RIGHTS TO YOUR CHILD AND YOUR CHILD MAY BE ADOPTED WITHOUT YOUR CONSENT AND WITHOUT NOTICE TO YOU" (see Social Services Law § 384-b [3] [e]).
Addressing the merits of Family Court's determination, we find that the uncle demonstrated by clear and convincing evidence that, with his assistance, the authorized agency, the Broome County Department of Social Services (hereinafter DSS), made diligent and extensive efforts to encourage and strengthen respondent's relationship with the child (see Social Services Law § 384-b [7] [a], [f]; see Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d 422, 429 [*3][2012]; Matter of Keadden W. [Hope Y.], 165 AD3d at 1507-1508). Further, "[t]here is a sound and substantial basis in the record to support [the c]ourt's determinations that the child was permanently neglected and to terminate [respondent's] parental rights" (Matter of Timothy GG. [Meriah GG.], 163 AD3d 1065, 1069-1070 [2018], lvs denied 32 NY3d 908 [2018]). As relevant here, "[a] permanently neglected child is one who is in the care of an authorized agency and whose parent has failed, for a period of more than one year following the date such child came into the care of an authorized agency, substantially and continuously or repeatedly to . . . plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d 1077, 1077-1078 [2018] [internal quotation marks and citation omitted]; see Social Services Law § 384-b [7] [a]). Diligent efforts include "counseling, making suitable arrangements for visitation, providing assistance to the parent[] to resolve or ameliorate the problems preventing discharge of the child to the[] [parent's] care and advising the parent at appropriate intervals of the child's progress and development" (Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d at 429 [internal quotation marks and citation omitted]; see Social Services Law § 384-b [7] [f]; Matter of Walter DD. [Walter TT.], 152 AD3d 896, 897 [2017], lv denied 30 NY3d 905 [2017]).
DSS devised a service plan that addressed the obstacles to respondent's reunification with the child. The testimony reflected that DSS provided caseworkers who tried to regularly meet with respondent to provide caseworker counseling and assistance. This was frustrated by respondent's frequent moves and repeated failure to provide the caseworkers or the uncle with her contact information, including new phone numbers for extended periods of time, sometimes for a month or more. The caseworkers made appropriate referrals for substance abuse evaluations and drug screening, although respondent missed one or more drug tests and failed to follow through with substance abuse education. Respondent was referred to anger management classes and parenting classes, which she ultimately completed. She was supplied with transportation assistance and bus passes for visitation, which required travel of over an hour to the uncle's home, but often missed visits after failing to pick up the bus passes. The uncle and fiancée also provided respondent with bus money and rides home and encouraged her to move closer to them to facilitate contact with the child, which she declined. For almost a year, the uncle and fiancée welcomed respondent to stay in their home for weekend visits with the child, until she became disrespectful and rude to them. Respondent was also offered assistance with finding safe and suitable housing, with which she failed to follow through, a significant problem given that she frequently bounced between residences. Accordingly, Family Court's finding that diligent efforts were made is supported by the record (see Matter of Keadden W. [Hope Y.], 165 AD3d at 1508).
There is also clear and convincing evidence that respondent failed to develop a realistic plan for the child's future, although able to do so. Although respondent attended some classes and supervised visits and partly accepted services, she did not meaningfully benefit from them or progress toward the point where she had the ability to reunify with the child (see id.). Respondent never obtained suitable or stable housing, moving seven times during the relevant time period, and she failed to maintain employment other than for short periods of time, even when her then-employer and the uncle were willing to accommodate her work schedule. She continued to engage in altercations with family members and others, and failed to maintain consistent contact with DSS or the uncle or to advise them for extended periods of time where or how she could be located. Despite having full Friday to Sunday alternate weekend visits at the uncle's home for almost a year where she was permitted to stay and was assisted with transportation, respondent missed about half of her scheduled visits with the child, often failing to let anyone know that she would not be coming or to reschedule the visits, although she visited her incarcerated boyfriend out of state on a weekly basis. When visits were reduced to alternate Saturdays to Sundays, respondent continued to miss almost half of them, and when they were further reduced to alternate Saturdays, partly at the parent resource center in Corning to allow professional observation, respondent attended only about 15% of them. As a result, respondent often did not visit the child for a month at a time, did not see the child at all in the three months prior to the filing of this petition, and rarely called to inquire about the child.
Despite completing a parenting class, respondent did not gain insight into the most basic needs of the child, including with regard to food and diapers or child-appropriate behaviors, interaction and schedules; she provided almost no financial support despite a child support order requiring that she do so. Respondent admitted engaging in drug-related criminal behavior with her boyfriend, who she planned to have act as a father-figure to the child, and did not consistently show up for drug tests or complete substance abuse education classes as recommended. Although respondent, to her credit, engaged in some of the services offered and participated in some visitation despite the transportation difficulties, she failed to adequately address and remedy the problems that led to the child's removal. The record as a whole established that, after over a year of assistance, respondent was not capable of properly and safely caring for the child and had failed to plan for the return of the child, although able to do so (see Social Services Law § 384-b [7] [a], [c]; Matter of Keadden W. [Hope Y.], 165 AD3d at 1508-1509; Matter of Zyrrius Q. [Nicole S.], 161 AD3d 1233, 1234-1235 [2018], lv denied 32 NY3d 903 [2018]; Matter of Paige J. [Jeffrey K.], 155 AD3d 1470, 1474 [2017]). Thus, we discern no basis upon which to disturb Family Court's finding that respondent permanently neglected the child.
"Following an adjudication of permanent neglect, the sole concern at a dispositional hearing is the best interests of the child and there is no presumption that any particular disposition, including the return of the child to the parent, promotes such interests" (Matter of Jessica U. [Stephanie U.], 152 AD3d 1001, 1005 [2017] [internal quotation marks, brackets and citations omitted]; accord Matter of Keadden W. [Hope Y.], 165 AD3d at 1509; see Family Ct Act § 631). Given the foregoing circumstances, we are unpersuaded by respondent's argument that termination of her parental rights and freeing the child for adoption did not serve the best interests of the child. The child has thrived since October 2014 in the care of the uncle and his fiancée, who have indicated a willingness and desire to adopt the child. At the time of the dispositional hearing, respondent had not meaningfully corrected the many shortcomings that led to the child's removal three years earlier, and we do not find that Family Court abused its considerable discretion in finding that a suspended judgment was not in the child's best interests (see Family Ct Act § 631; Matter of Jessica U. [Stephanie U.], 152 AD3d at 1005-1006; Matter of Alexander Z. [Jimmy Z.], 149 AD3d 1177, 1180 [2017]). To that end, "[t]he purpose of a suspended judgment is to provide a parent who has been found to have permanently neglected his or her child with a brief grace period within which to become a fit parent with whom the child can be safely reunited" (Matter of Jessica U. [Stephanie U.], 152 AD3d at 1006 [internal quotation marks, brackets and citation omitted]; see Family Ct Act § 633). The testimony at the dispositional hearing failed to establish that such a "brief grace period would lead to the necessary improved parenting and a safe reunification with respondent" or that it would be in the child's best interests (Matter of Jessica U. [Stephanie U.], 152 AD3d at 1006; see Matter of Alexander Z. [Jimmy Z.], 149 AD3d at 1180). Accordingly, Family Court's determination to terminate respondent's parental rights was supported by a sound and substantial basis in the record.
Garry, P.J., Aarons, Rumsey and Pritzker, JJ., concur.
ORDERED that the appeal from the order entered March 8, 2017 is dismissed, without costs.
ORDERED that the order entered June 15, 2017 is affirmed, without costs.



Footnotes

Footnote 1: Further, Family Ct Act § 1032 does not apply here, as this proceeding was commenced pursuant to Social Services Law § 384-b.