Abdelhamed v XYZ Limousine, Inc.
2026 NY Slip Op 03770
June 17, 2026
Appellate Division, Second Department
Christopher
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Mohamed H. Abdelhamed, et al., appellants,
v
XYZ Limousine, Inc., etc., et al., respondents.

Supreme Court of the State of New York, Appellate Division, Second Judicial Department
Decided on June 17, 2026
2021-07641, (Index No. 526546/19)
Lara J. Genovesi, J.P.
Linda Christopher
Lillian Wan
Lourdes M. Ventura, JJ.

Joseph & Kirschenbaum LLP, New York, NY (Lucas C. Buzzard, Josef Nussbaum, and D. Maimon Kirschenbaum of counsel), for appellants.
Arkin Solbakken LLP, New York, NY (Lisa C. Solbakken, Robert C. Angelillo, Deana Davidian, and Thomas G. O'Brien of counsel), for respondents.

APPEAL by the plaintiffs, in a putative class action, inter alia, to recover damages for violations of Labor Law articles 6 and 19, from an order of the Supreme Court (Loren Baily-Schiffman, J.), dated September 14, 2021, and entered in Kings County. The order granted the defendants' motion for summary judgment dismissing the first through sixth causes of action.
Christopher, J.

[*1]
OPINION & ORDER
This appeal concerns the scope of an exception to certain Labor Law protections that apply to individuals employed or permitted to work as taxicab drivers (hereinafter the taxicab exception) (see Labor Law § 651[5][d]) and the application of the doctrine of tax estoppel. For the reasons that follow, we conclude that the defendants failed to establish, prima facie, that the causes of action were barred by either the taxicab exception or the doctrine of tax estoppel.
I. Factual and Procedural Background
The plaintiffs allege that the defendants XYZ Limousine, Inc., XYZ Two Way Radio Taxi Assoc., Inc., and XYZ Two Way Radio Service, Inc. (hereinafter collectively XYZ) employed the plaintiffs as black car drivers. According to the amended class action complaint, XYZ held contracts to provide recurring limousine services to law firms, banks, and other similar businesses. The plaintiffs allegedly had no input into the terms of these recurring contracts, were required to work regular shifts of up to 14 hours per day, and were required to work exclusively for XYZ.
The plaintiffs commenced this putative class action against XYZ and XYZ's alleged principal, the defendant Mohamed Mowad, inter alia, to recover damages for violations of New York Labor Law articles 6 and 19.
The plaintiffs served subpoenas upon a number of XYZ's alleged customers, two of which produced documents in response. The first, a law firm, produced, among other things, a "master services agreement" identifying XYZ as a "ground transportation vendor." The master services agreement provided that XYZ would furnish the law firm with certain services "in accordance with Statements of Work agreed to from time to time." Schedule A to the master services agreement defined "services" to include "systems analysis and design services, assessment services, staff augmentation services, computer programming services, integration services, consulting and other services as set forth in each Statement of Work," and Schedule B consisted of a "Form of Statement of Work" specifying that XYZ would furnish the law firm with "24hr, 7days, all year ground transportation service." Schedule B was signed and dated by representatives of the [*2]law firm and XYZ. The second alleged customer, a media corporation, produced a copy of XYZ's February 2014 rate book which set forth pricing for "Executive Luxury Sedan Service" for routes within the City of New York and routes between the City and locations as far away as Maine and Virginia. The rate book was signed by representatives of the media corporation and XYZ in July 2015 and was accompanied by a "Document History" page identifying the rate book as "EXHIBIT A to Transportation Services Agreement."
Before the completion of discovery, the defendants moved for summary judgment dismissing the first through sixth causes of action, arguing that the plaintiffs' claims were barred by the taxicab exception (see Labor Law § 651[5][d]) and by the doctrine of tax estoppel. In support of their motion, the defendants submitted, inter alia, the documents produced by the law firm and media corporation as well as an affidavit of XYZ's controller, Yuk Man Lee. Lee averred that XYZ was "a cooperative association of black car ground transportation drivers" whose shareholders enjoyed certain "radio rights." According to Lee, XYZ did not have "any contracts requiring XYZ to provide transportation services to anyone." The defendants also submitted the plaintiffs' admissions that they each declared themselves "self-employed" on their income tax returns.
In opposition, the plaintiffs submitted, among other things, an affidavit of Mowad, which had been submitted in a separate action. In this affidavit, Mowad averred that he was the president of XYZ and that "XYZ has historically maintained and relied on many institutional customers . . . who do not pay immediately after receiving transportation services" but "are invoiced by XYZ for all services provided to them on a monthly basis." The plaintiffs also submitted their own affidavits, in which each averred that the "vast majority" of their work for XYZ "involved transporting repeat customers" and that XYZ unilaterally decided to characterize the plaintiffs as self-employed for income tax purposes.
In an order dated September 14, 2021, the Supreme Court declined to apply the doctrine of tax estoppel but, citing Jihui Zhang v XYZ Limousine, Inc. (2019 WL 1220310, 2019 US Dist LEXIS 42764 [ED NY, No. CV 15-7440 (JS) (AKT)]) and Arena v Plandome Taxi Inc. (2014 WL 1427907, 2014 US Dist LEXIS 51967 [ED NY No. 12-CV-1078 (DRH) (WDW)]), granted the defendants' motion for summary judgment dismissing the first through sixth causes of action on the ground that the plaintiffs' claims were barred by the taxicab exception (see Labor Law § 651[5][d]). The plaintiffs appeal.
Preliminarily, the plaintiffs did not oppose that branch of the defendants' motion which was for summary judgment dismissing so much of the fourth cause of action as sought to recover damages for violations of Labor Law § 195(1). Thus, the plaintiffs' appeal from so much of the order as granted that branch of the defendants' motion must be dismissed for lack of aggrievement (see CPLR 5511; Mixon v TBV, Inc., 76 AD3d 144, 156-157).
II. Discussion
On appeal, the defendants contend that the Supreme Court properly granted their motion for summary judgment dismissing the subject portions of the amended complaint on the ground that the causes of action are barred by the taxicab exception (see Labor Law § 651[5][d]) or, as an alternative ground for affirmance, that the causes of action are barred by the doctrine of income tax estoppel. We disagree.
The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issue of fact (see Alvarez v Prospect Hosp., 68 NY2d 320, 324). "[A] defendant moving for summary judgment dismissing one of the plaintiff's causes of action may generally sustain his or her prima facie burden by negating a single essential element of that cause of action" (Smith v City of New York, 210 AD3d 53, 67 [internal quotation marks omitted]). "Failure to make such showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853). "Once this showing has been made, however, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (Alvarez v Prospect Hosp., 68 NY2d at 324).
A. Labor Law Articles 6 and 19 and the Taxicab Exception
"Article 6 of the Labor Law sets forth a comprehensive set of statutory provisions enacted to strengthen and clarify the rights of employees to the payment of wages" (Truelove v Northeast Capital & Advisory, 95 NY2d 220, 223). In this action, the plaintiffs allege that the defendants violated Labor Law article 6 by "demand[ing] or accept[ing], directly or indirectly, any [*3]part of the gratuities . . . received by an employee" (Labor Law § 196-d) (third cause of action), failing to furnish each employee with a statement of wages meeting certain requirements (see id. § 195[3]) (fourth cause of action), and making unlawful deductions from the wages of any employee (see id. § 193) (fifth cause of action).
The Minimum Wage Act, codified as Labor Law article 19 (Labor Law § 650 et seq.), "requires every employer to pay to each of [its] employees at least the amount set forth in the statute" (Matter of Faculty Student Assn. of State Univ. of Oneonta v Ross, 54 NY2d 460, 463; see Labor Law § 652[1]). In this action, the plaintiffs allege that the defendants violated Labor Law article 19 by failing to pay the minimum wage for all hours worked (see Labor Law § 652[1]) (first cause of action), failing to pay overtime wages for all hours worked in excess of 40 hours in any workweek (see id. § 652[2]; 12 NYCRR 142-2.2) (second cause of action), and failing to pay "spread-of-hours" compensation for any day in which the spread of hours exceeded 10 hours or there was a split shift (see Labor Law § 652[2]; 12 NYCRR 142-2.4) (sixth cause of action).
Labor Law articles 6 and 19 contain separate definitions of "employee" as used in each article (see Labor Law §§ 190[2], 651[5]).
"[W]hen presented with a question of statutory interpretation, a court's primary consideration is to ascertain and give effect to the intention of the Legislature" (Matter of Wohl v Bruen, 238 AD3d 818, 821 [internal quotation marks omitted]; see Town of Aurora v Village of E. Aurora, 32 NY3d 366, 372). "'Inasmuch as the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof'" (Matter of Winter v Luft, 230 AD3d 1084, 1087, quoting Matter of Town of Southampton v New York State Dept. of Envtl. Conservation, 39 NY3d 201, 209). "Where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded" (Town of Aurora v Village of E. Aurora, 32 NY3d at 372-373 [alterations and internal quotation marks omitted]).
As used in Labor Law article 6, "employee" is defined as "any person employed for hire by an employer in any employment" (Labor Law § 190[2]), with one narrow exception for certain minor league baseball players (see id., as amended by L 2024, ch 391, § 2 [eff Sept. 27, 2024]), and "employer" is defined as "includ[ing] any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service" but excluding governmental agencies (Labor Law § 190[3]).
As used in Labor Law article 19, the term "employee" "includes any individual employed or permitted to work by an employer in any occupation" (Labor Law § 651[5]), with several stated exceptions (see Matter of Faculty Student Assn. of State Univ. of Oneonta v Ross, 54 NY2d at 463). One such exception is for individuals employed or permitted to work as a driver engaged in operating a taxicab (see Labor Law § 651[5][d]).
The defendants' contention that the taxicab exception to Labor Law article 19 also applies to article 6 is without merit. Given that the "Definitions" sections of Labor Law articles 6 and 19 are each qualified by the phrase "[a]s used in this article" (Labor Law §§ 190, 651), we must draw the inference that the omission of any taxicab exception from Labor Law article 6 reflects a legislative determination to except drivers who operate taxicabs from the minimum wage provisions of article 19 but not from the rights to the payment of wages under Labor Law article 6 (see Pachter v Bernard Hodes Group, Inc., 10 NY3d 609, 616).
Relying on certain federal court decisions, the defendants further contend that the taxicab exception to Labor Law article 19 is substantially similar to the taxicab exemption from the maximum hour requirements of the federal Fair Labor Standards Act (FLSA) (see 29 USC § 213[b][17]). However, those decisions are unpersuasive. In Arena v Plandome Taxi Inc., the plaintiffs did not present any arguments in opposition to the defendants' contention that those plaintiffs were subject to the taxicab exception set forth in Labor Law § 651 (Arena v Plandome Taxi Inc., 2014 WL 1427907, *16, 2014 US Dist LEXIS 51967, *46). The United States District Court for the Eastern District of New York (hereinafter the District Court) concluded, with no discussion of the facts, that the plaintiffs' "employment activities fell squarely within the [New York State] Department of Labor's definition of 'operating a taxicab'" (id. at 2014 WL 1427907, *17, 2014 US Dist LEXIS 51967, *50, quoting 12 NYCRR 142-2.14[c][6]). In Munoz-Gonzalez v D.L.C. Limousine Serv., Inc. (2017 WL 2973980, *7, 2017 US Dist LEXIS 107925, *19-20 [SD NY, No. 15-CV-9368 (JPO)], affd 904 F3d 208 [2d Cir]), unlike here, the parties agreed that the Labor Law [*4]taxicab exception and FLSA taxicab exemption were substantially similar. In Jihui Zhang v XYZ Limousine, Inc., the District Court, citing Arena and Munoz-Gonzalez, found that the Labor Law article 19 taxicab exception was substantially similar to the FLSA taxicab exemption and, in effect, applied the FLSA taxicab exemption to those plaintiffs' Labor Law claims (see Jihui Zhang v XYZ Limousine, Inc., 2019 WL 1220310, *10, 2019 US Dist LEXIS 42764, *31-32). The defendants' contention that the taxicab exception to Labor Law article 19 is substantially similar to the taxicab exemption of the FLSA, like these federal court decisions, ignores substantial differences in the statutory text, the interpretation of these statutes, and the regulations that apply.
The statutory text alone demonstrates that the taxicab exception to Labor Law article 19 differs significantly from the taxicab exemption in the FLSA (see Labor Law § 651[5][d]; 12 USC § 213[b][17]). The plain meaning of the FLSA taxicab exemption requires a court to consider whether a driver's "employer [was] engaged in the business of operating taxicabs" (29 USC § 213[b][17]), while the taxicab exception to Labor Law article 19 requires consideration of whether the driver him- or herself was "engaged in operating a taxicab" (Labor Law § 651[5][d]).
Furthermore, Labor Law article 19 is "to be liberally construed so as to permit as many individuals as possible to take advantage of the benefits it offers" (Matter of Settlement Home Care v Industrial Bd. of Appeals of Dept. of Labor of State of N.Y., 151 AD2d 580, 581). Labor Law article 19 was enacted to relieve the financial hardship experienced by persons employed in occupations at wages insufficient to provide adequate maintenance for themselves and their families (see Labor Law § 650; Matter of Settlement Home Care v Industrial Bd. of Appeals of Dept. of Labor of State of N.Y., 151 AD2d at 581). Thus, unlike the FLSA, whose exemptions are subject to "a fair (rather than a narrow) interpretation" (Encino Motorcars, LLC v Navarro, 584 US 79, 88 [internal quotation marks omitted]), exceptions to Labor Law article 19 "are to be narrowly construed so as not to frustrate the legislative purpose underlying its enactment" (Matter of Settlement Home Care v Industrial Bd. of Appeals of Dept. of Labor of State of N.Y., 151 AD2d at 581).
Moreover, Labor Law § 651(5) provides that "[t]he exclusions from the term 'employee' contained in this subdivision shall be defined by regulations of the [C]ommissioner [of the Department of Labor]." "The Legislature may authorize an administrative agency 'to fill in the interstices of the legislative product by prescribing rules and regulations consistent with the enabling legislation'" (Matter of Allstate Ins. Co. v Rivera, 12 NY3d 602, 608, quoting Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 865). "'In so doing, an agency can adopt regulations that go beyond the text of that legislation, provided they are not inconsistent with the statutory language or its underlying purposes'" (id. at 608, quoting Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d 249, 254). "A duly promulgated regulation that meets these criteria has the force of law" (Raffellini v State Farm Mut. Auto. Ins. Co., 9 NY3d 196, 201).
Pursuant to the Minimum Wage Order for Miscellaneous Industries and Occupations promulgated by the Commissioner of the Department of Labor,
"[t]he term driver engaged in operating a taxicab means an individual employed to drive an automobile equipped to carry no more than seven passengers, which is used in the business of carrying or transporting passengers for hire on a zone or meter fare basis, and the use of which is generally limited to a community's local transportation needs and which is not operated over fixed routes, or between fixed terminals, or under contract" (12 NYCRR 142-2.14[c][6]).
Interpreting the FLSA's taxicab exemption, in contrast, the United States Court of Appeals for the Second Circuit "consulted dictionaries" to reach its understanding that defining "taxicab" involves three factors: "(1) a chauffered passenger vehicle; (2) available for hire by individual members of the general public; (3) that has no fixed schedule, fixed route, or fixed termini" (Munoz-Gonzalez v D.L.C. Limousine Serv. Inc., 904 F3d at 210). The Second Circuit declined to modify this definition to reflect the definition by the United States Department of Labor as set forth in a 2016 Field Operations Handbook (hereinafter the Handbook), that a "taxicab business . . . operates without fixed routes or contracts for recurrent transportation" (id. at 216 [internal quotation marks omitted]). The Second Circuit found that the Handbook "lacks the force of law" (id. at 216) and reasoned that a company receiving virtually all of its business from recurrent contracts and corporate clients might not be "available for hire by individual members of the general public," a factor that was already a part of the Second Circuit's definition (id. at 217).
However, Labor Law § 651(5) explicitly authorized the Commissioner of the New [*5]York State Department of Labor to promulgate a rule defining "driver engaged in operating a taxicab," and the promulgated rule defining that term considers whether the automobile is operated under contract (12 NYCRR 142-2.14[c][6]) rather than whether the automobile is available for hire by individual members of the general public (see Labor Law § 651[5]). Since the Commissioner's rule "does not contradict the enabling statute and 'is not so lacking in reason for its promulgation that it is essentially arbitrary, the rule has the force and effect of law'" (Matter of Parents for Educ. & Religious Liberty in Schs. v Young, 44 NY3d 477, 477, quoting Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d at 254).
Consequently, in order to establish that the causes of action to recover damages for violations of Labor Law article 19 were barred by the taxicab exception, the defendants were required to demonstrate that the plaintiffs' automobiles were not operated under contract as part of their prima facie case (see Labor Law § 651[5][d]; 12 NYCRR 142-2.14[c][6]).
Here, viewing the evidence in the light most favorable to the plaintiffs as the nonmoving parties (see Jacobsen v New York City Health & Hosps. Corp., 22 NY3d 824, 833), the defendants failed to establish, prima facie, that the plaintiffs were employed or permitted to work as a driver engaged in operating a taxicab (see Labor Law § 651[5][d]; 12 NYCRR 142-2.14[c][6]). The defendants' submissions included the master services agreement between XYZ and the law firm, which identified XYZ as "a ground transportation vendor." Attached to the master services agreement was the "Form of Statement of Work," which specified that XYZ would furnish the law firm with "24hr, 7days, all year ground transportation service." The defendants also submitted the signed rate book with an accompanying Document History page identifying the rate book as "EXHIBIT A to Transportation Services Agreement." Notwithstanding the defendants' contentions that the signed and dated "Form of Statement of Work" was only a sample or an agreement to agree, that the references to certain computer programing and related consulting services demonstrated that XYZ had not agreed to provide ground transportation services, and that the signed rate book lacked essential terms of a contract to provide ground transportation services, these documents nonetheless raise issues of fact as to the existence of the alleged contracts for ground transportation services between XYZ and third parties (see Hoffman v Verizon Wireless, Inc., 125 AD3d 806, 808) pursuant to which the plaintiffs allegedly operated their automobiles (see 12 NYCRR 142-2.14[c][6]).
Accordingly, the Supreme Court erred in granting those branches of the defendants' motion which were for summary judgment dismissing the first, second, third, fifth, and sixth causes of action, and so much of the fourth cause of action as sought to recover damages for violation of Labor Law § 195(3) based on the taxicab exception, regardless of the sufficiency of the opposing papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d at 853).
B. Tax Estoppel
The defendants contend, as an alternative ground for affirmance (see Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 545-546), that they were entitled to summary judgment dismissing the subject portions of the amended complaint based on the doctrine of tax estoppel, which precludes a party to litigation from taking a position contrary to a position taken in an income tax return (see Mahoney-Buntzman v Buntzman, 12 NY3d 415, 422).
Tax estoppel is a species of "quasi-estoppel" or "estoppel against inconsistent positions" (Mahoney-Buntzman v Buntzman, 13 Misc 3d 1216[A], 2006 NY Slip Op 51852(U), *11, affd in relevant part 51 AD3d 732, 733, affd in relevant part 12 NY3d at 423). Like equitable estoppel, quasi-estoppel "is 'imposed by law in the interest of fairness' to prevent 'fraud or injustice'" (Orellana v 115 Enters. Group LLC, 231 AD3d 650, 651, quoting Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96, 106-107). "In function, however, equitable estoppel seeks to protect parties' reasonable expectations, whereas quasi-estoppel seeks to protect the integrity of litigation" (Sowinski v Walker, 198 P3d 1134, 1147 [Alaska] [citations omitted]; see Mahoney-Buntzman v Buntzman, 12 NY3d at 422; Amtrust Inc. v Larson, 388 F3d 594, 601 [8th Cir]; 28 Am Jur 2d, Estoppel and Waiver § 32). There is no automatic "rule of estoppel . . . based on fealty to the United States Treasury" (Kassim v City of Schenectady, 415 F3d 246, 251 [2d Cir]). Tax estoppel, like any species of quasi-estoppel, "'must be based on the previous assertion of a position so inconsistent with the one now taken as to make the present claim unconscionable'" (Jamison v Consildated Util., Inc., 576 P2d 97, 102 [Alaska], quoting Fast v Fast, 209 Kan 24, 29, 496 P2d 171, 175 [Kan]). "[Q]uasi-estoppel is inherently flexible and cannot be reduced to any rigid formulation" (Whiteacre Partnership v Biosignia, Inc., 358 NC 1, 18, 591 SE2d 870, 882 [NC]).
Thus, the party seeking application of the doctrine of tax estoppel bears the initial [*6]burden of establishing, prima facie, that the party to be estopped asserted a position in a tax return which is inconsistent with the position now taken (see United Hay, LLC v Harounian, 213 AD3d 443, 444). "If the statements can be reconciled[,] there is no occasion to apply an estoppel" (Simon v Safelite Glass Corp., 128 F3d 68, 73 [2d Cir]; see Robert Owen Lehman Found., Inc. v Israelitische Kultusgemeinde Wien, 197 AD3d 865, 865; Angiolillo v Christie's, Inc., 185 AD3d 442, 443; Matter of Elmezzi, 124 AD3d 886, 887).
If this initial burden is met, the court must determine whether the position now taken is "'so inconsistent . . . as to make the present claim unconscionable'" (Jamison v Consol. Util., Inc. 576 P2d at 102, quoting Fast v Fast, 209 Kan at 29, 496 P2d at 175). Although "quasi-estoppel does not require ignorance or reliance as essential elements, . . . they are relevant to the inquiry" (Cooper Leasing, LLC v Woronzof Condominium Assn., 548 P3d 636, 650 [Alaska] [internal quotation marks omitted]; see Matter of Coven v Neptune Equities, Inc., 198 AD3d 643, 646; Kalaijian v Grahel Assoc., LLC, 193 AD3d 832, 833; Man Choi Chiu v Chiu, 125 AD3d 824, 825-826). The court may also consider "whether the party asserting the inconsistent position has gained an advantage or produced some disadvantage through the first position" and "the magnitude of the inconsistency" (Rockstad v Erikson, 113 P3d 1215, 1223 [Alaska] [internal quotation marks omitted]; see Orellana v 115 Enters. Group LLC, 231 AD3d at 651; Goldwater v Amicus Assoc. L.P., 168 AD3d 405, 406).
Tax estoppel is inappropriate where the party against whom estoppel is sought offers a reasonable explanation as to why the statement in the tax return contradicts reality, such as where the prior position was based solely on a misrepresentation made by the party seeking estoppel (see Tradesman Program Mgrs., LLC v Doyle, 202 AD3d 456, 457; Matter of Frankel, 123 AD3d 826, 827). Tax estoppel is also inappropriate where the inconsistent position involves a mixed question of law and fact (see Spalter v Spalter, 234 AD3d 508, 509-510) or implicates competing policy interests such that the interest of justice weighs in favor of deciding a party's claims on the merits notwithstanding any inconsistency with their prior position (see Giannuzzi v Kearney, 160 AD3d 1079, 1081).
The determination whether to apply the doctrine of tax estoppel is entrusted to the trial court's sound discretion (see PH-105 Realty Corp v Elayaan, 183 AD3d 492, 492).
Here, contrary to the defendant's contention, the plaintiffs' admissions that they declared themselves "self-employed" on their income tax returns were inadequate to establish, prima facie, that the plaintiffs should be estopped from asserting the existence of an employment relationship. The determination of the existence of an employment relationship "involve[s] a mixed question of law and fact" (O'Gorman v Journal News Westchester, 2 AD3d 815, 817; see Bynog v Cipriani Group, 1 NY3d 193, 198-199), and the plaintiffs' admissions that they declared themselves "self-employed" on their income tax returns is not inconsistent with their allegations that XYZ exercised control over the plaintiffs' work, inter alia, by paying the plaintiffs according to XYZ's own policies and that XYZ, in exercising that control, unlawfully misclassified the plaintiffs as independent contractors (see Spalter v Spalter, 234 AD3d at 509-510).
Moreover, the plaintiffs' affidavits, which allege that XYZ unilaterally decided how to characterize the plaintiffs' income for tax purposes, offered a reasonable explanation as to why the statements in their income tax returns contradict reality (see Tradesman Program Mgrs., LLC v Doyle, 202 AD3d at 457; Matter of Frankel, 123 AD3d at 827). Since "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer" (Bynog v Cipriani Group, 1 NY3d at 198), the application of the doctrine of tax estoppel against a purported employee generally will not serve the interest of justice where there exists an issue of fact as to whether the purported employer misclassified the employee while exercising such control (see generally Matter of Vega [Postmates Inc.—Commissioner of Labor], 35 NY3d 131, 137-138). Thus, while the manner in which the relationship is treated for income tax purposes is certainly a significant consideration in determining whether an employment relationship exists, the purported employee's income tax returns are "'generally not singularly dispositive'" (Hernandez v Chefs Diet Delivery, LLC, 81 AD3d 596, 599, quoting Gagen v Kipany Prods. Ltd., 27 AD3d 1042, 1043).
Accordingly, the Supreme Court properly determined that the defendants were not entitled to summary judgment dismissing the subject portions of the amended complaint on the ground that the causes of action were barred tax estoppel.
III. Remaining Contentions
The plaintiffs' remaining contentions are either not properly before this Court or need [*7]not be reached in light of our determination.
IV. Conclusion
Accordingly, the appeal from so much of the order as granted that branch of the defendants' motion which was for summary judgment dismissing so much of the plaintiffs' fourth cause of action as sought to recover damages for violations of Labor Law § 195(1) is dismissed, the order is reversed insofar as reviewed, on the law, and those branches of the defendants' motion which were for summary judgment dismissing the first, second, third, fifth, and sixth causes of action, and so much of the fourth cause of action as sought to recover damages for violation of Labor Law § 195(3), are denied.
GENOVESI, J.P., WAN and VENTURA, JJ., concur.
ORDERED that the appeal from so much of the order as granted that branch of the defendants' motion which was for summary judgment dismissing so much of the fourth cause of action as sought to recover damages for violations of Labor Law § 195(1) is dismissed; and it is further,
ORDERED that the order is reversed insofar as reviewed, on the law, and those branches of the defendants' motion which were for summary judgment dismissing the first, second, third, fifth, and sixth causes of action, and so much of the fourth cause of action as sought to recover damages for violation of Labor Law § 195(3), are denied; and it is further,
ORDERED that the plaintiffs are awarded one bill of costs.
ENTER:
Darrell M. Joseph
Clerk of the Court